16368

LANGFORD v. STATE BOARD OF FISHERIES

(60 S. E. (2d) 59)

*Mr. Henry T. Gaud,* of Charleston, *for Appellant,*

*Messrs. A. R. McGowan,* of Charleston, and *D. N. Rivers,* of Ridgeland, *for Respondent,*

June 12, 1950.

BAKER, Chief Justice.

For convenience, we will in most instances, refer to the respondent as plaintiff, and to the appellant as defendant.

This is an appeal by the State Board of Fisheries, the defendant above named from an order of Judge Moss, dated December 7, 1949, reinstating E. R. Langford, the plaintiff above named, as inspector for Jasper County, under the law relating to the State Board of Fisheries, and requiring the payment to him of his bi-monthly salary, beginning November 1, 1949, until the further order of the Court, subject to certain contingencies, as will hereinafter appear.

There were four other suits instituted on or about the same time by the inspectors for Clarendon, Dorchester, Hampton and Williamsburg Counties, respectively; and these suits were heard and disposed of by Judge Moss at the same time as was the *Langford case* and in the same manner, and were likewise appealed to this Court. These companion cases are essentially similar to the *Langford case* in all pertinent respects, except as to the matter of jurisdictional venue. Consequently counsel signed the following stipulation, which is contained in the record: "It is hereby stipulated and agreed by and between counsel for the Plaintiffs

and for the Defendants that, subject to the approval of the Supreme Court, the five cases considered herein shall be deemed consolidated for the purposes of Appeal to the Supreme Court due to the similarity of the facts and of the law therein."

But as a matter of convenience we shall first consider the *Langford case* at length, without regard to the other cases; referring to them later in this opinion.

Perhaps a recital of the statutory background, in connection with certain undisputed facts, will tend to clarify the issues before us; the same being issues of law rather than of fact. The law relating to the State Board of Fisheries appears to have been originally enacted in 1924, but there were many subsequent amendments; and the law as contained in the 1942 Code will be found in Sections 3299 to 3421-3, both inclusive. Section 3304 provides for the creation of the Board consisting of three persons having expert knowledge of coastal fisheries and the like, who shall be separately appointed and commissioned by the Governor. And Section 3316 provides for the appointment by the Board of a chief inspector, and further stipulates that five assistant inspectors, "one each from the counties of Beaufort, Colleton, Charleston, Georgetown and Horry, shall be appointed by the Governor upon the recommendation of the Senator and a majority of the legislative delegations from each of said counties."

However, Section 3304 was amended by an act of the General Assembly approved March 14, 1944, Acts 1944, page 1230, and this amendment provides that the State Board of Fisheries shall consist of five persons and that: "The said Board as so constituted shall be a body corporate."

The General Appropriation Act for the year 1942 contains the following proviso after setting out the appropriations of money made for the Board, Acts 1942, page 1813: *"Provided,* That one inspector each shall be appointed for Jasper County, Hampton County, Clarendon County, and

Dorchester County as is now provided by law for the appointment of inspectors in the counties of Beaufort, Charleston, Colleton, Georgetown, and Horry, and an additional inspector for Beaufort County shall be appointed in the same manner."

The identical proviso is contained in the General Appropriation Acts for the years 1943, Acts 1943, page 375, 1944, Acts 1944, page 1485, and 1945, Acts 1945, page 434. But in 1946, Acts 1946, page 1639, the proviso is enlarged so as to include Berkeley County, and provides that one inspector each "shall be appointed for Jasper County, Berkeley County, Hampton County, Clarendon County and Dorchester County" etc.; no other change being made. But in the General Appropriation Act for 1947, Acts 1947, page 655, Williamsburg County was also included, raising the number of these counties to six; and the proviso for 1948, Acts 1948, page 2147, and 1949 is to the identical effect.

There is, however, another change made in the General Appropriation Act for 1949 (See Acts 1949, page 702) where the item for the "District Inspectors," contrary to that in previous years, shows a parenthesis as follows: "(Part or Full Time)"; that is to say, the appropriation of $19,480.00 is allotted for "District Inspectors (Part or Full Time)." No other reference is made to the matter of part or full time.

It is admitted that the plaintiff, E. R. Langford, was duly appointed according to law as inspector for Jasper County, but the precise date of his appointment is not shown in the record; it appearing, however, that he was appointed more than two years before the institution of this action, and that he had continued in office without other appointment until the Board of Fisheries attempted to discharge him on or about October 14, 1949.

The facts relating to this attempted discharge are contained in a letter addressed to E. R. Langford, dated Octo-

ber 14, 1949, and set forth in the Transcript of Record at page 39, the full contents of the same being as follows:

"Mr. E. R. Langford,
Ridgeland, S. C.

"Dear Mr. Langford:

"At a regular meeting on October 6th, 1949, the members of the Board of Fisheries unanimously agreed that the services of an inspector in your district are not needed at this time.

"You are hereby advised that your services as inspector will be discontinued on October 31st, 1949, until such time as the Board may see fit to again place an inspector on active duty in your district. You will be dropped from the payroll on and after November 1st, 1949.

"Inasmuch as the chance of placing an inspector on active duty in your district in the near future is remote, you will be required to turn over to the Chief Inspector all state property with which you are charged previous to the time you receive your final salary check for the period October 16th, through October 31st, 1949.

"A list of the property with which you are charged is attached to this letter.

"Very truly yours,

ANDREW H. DuPRE,
*Chairman.*"

The plaintiff having received the foregoing letter and having been dropped from the payroll as of November 1, 1949, instituted this action upon his complaint, which was verified November 22, 1949. Counsel for the plaintiff then submitted the verified complaint to Judge Moss, who was presiding in the Fourteenth Circuit, and he issued his order, dated November 23, 1949, requiring the State Board of Fisheries to show cause before him at Ridgeland, at the County Courthouse, in the County of Jasper, on December 6, 1949, by what authority of law it had acted in the premises, and why it should not be ordered and directed to pay to the plaintiff

the compensation provided for him, pursuant to law. The summons, complaint and rule to show cause were served on the Secretary of the Board on November 23, 1949. Promptly thereafter the Chairman of the Board, through his counsel, gave notice that, appearing specially, two certain motions would be made; one to set aside the service on the ground that the State Board of Fisheries is not a corporation or association, and could not be sued in any capacity other than in the capacity of the individual five members of the Board; and the other to dismiss the rule to show cause upon the ground that the conditions of Circuit Court Rule 56, as stated in the notice, had not been complied with.

Both motions were denied by Judge Moss; and reserving its rights thereunder, the defendant filed its return and answer, and there was also filed in behalf of the plaintiffs a joint affidavit made by the plaintiff, Langford, and the plaintiffs in the four companion cases.

An inspection of the pleadings will show that there are several issues of law raised, but there is no dispute as to the facts hereinbefore alleged. Indeed, the only issues of fact purporting to be raised by the answer and return are contained in paragraphs 24 and 25 thereof, it being alleged in paragraph 24 that at a meeting of the Board held on July 27, 1948 (more than a year before the commencement of this action), the plaintiff was informed that his work had not been satisfactory, and that if it did not show improvement the Board would have to discontinue his services. And it is alleged in paragraph 25 that by a memorandum on or about March 7, 1949, over the signature of the Chairman, the plaintiff was informed that his daily reports were not satisfactory; all these allegations being in effect denied by the plaintiff in the joint affidavit. But these and other like allegations are not involved here, because *inter alia* the attempted discharge of the plaintiff, as shown by the letter already quoted, is not based thereon; and moreover, it is uncontradicted that there was no hearing accorded the plaintiff.

After argument by counsel for the respective parties, Judge Moss took the matter under advisement, and handed down his order dated December 7, 1949, wherein the defendant was directed to pay, or cause to be paid, to the plaintiff his bi-monthly compensation (the same being $65.00) for the whole month of November, 1949, and thereafter an equal amount on the 1st and 15th of each and every calendar month (quoting) "hereinafter ensuing during the fiscal year for which the said 1949 Appropriation Act is applicable, until the further Order of this Court and/or until the said Plaintiff shall have been, by due process of law, discharged from its pay roll after proper hearing on thirty (30) days' notice and replaced by a duly appointed and qualified successor in office."

There are numerous exceptions, but the questions involved, all being questions of law, as stated in appellant's brief are five only, the fifth relating specifically to the companion cases. We shall therefore first consider each of the other four questions in their order. Preliminary to this, however, it should be said that the objection originally made by the defendant to the sufficiency of the service of the papers was evidently abandoned, having doubtless been made through inadvertence, since the amendatory Act of 1944 hereinbefore referred to established the corporate existence of the Board, and the same is without doubt a governmental corporate agency; a body politic.

*Question 1. Was Plaintiff entitled to a Rule to Show Cause?*

At the hearing in the Court below, counsel for the defendant evidently relied principally upon Circuit Court Rule 56 as to this point, on the ground that there was no showing made in behalf of the plaintiff of any special reason for a notice of less than four days, nor was there any affidavit stating "the present conditions of the action, and whether at issue." But we do not think Circuit Court Rule 56 has any relevance here, because that rule re-

lates to the issuance of an order to show cause by way of substituting for a notice of motion, and is used when there is a special reason for a hearing in less than four days, and the purpose of the required affidavit is to show the existing status of the action. But it is quite obvious that the plaintiff did not seek to obtain a rule to show cause of this character, because the order issued by Judge Moss on November 23, 1949, was returnable on December 6, 1949, considerably more than four days thereafter.

The issuance of rules to show cause is manifestly not confined to the circumstances stated in Rule 56, which would plainly not be applicable to a rule to show cause issued for interlocutory relief, such as a temporary injunction, the appointment of a receiver, and the like. And in mandamus proceedings the issuance of rules to show cause is a part of the usual practice.

It was held in the case of *Darling v. Brunson,* 94 S. C. 207, 77 S. E. 860, 861, in which the opinion was delivered by Mr. Justice Woods, that where serious issues of fact are involved in an issue of title to office, it should not be tried under a rule to show cause, but quoting from the opinion: "But where questions of law only are involved, if the issues of fact may be readily and certainly determined without the formal taking of testimony, it would be looking too much away from the substance to the form to turn the parties out of court for the sake of having them make the very same issues in different words." We are of opinion that this case is, by analogy, quite in point here, for, as we have already observed, there is no dispute as to the pertinent facts in the case before us, the questions being those of law only. The question now before us should therefore be answered in the affirmative.

*Question 2. Can the State Board of Fisheries determine how the group appropriation for inspectors shall be expended?*

This question arises out of the fact that as we have ■ hereinbefore shown, the General Appropriation Act for 1949 contains with reference to the salaries for the district inspectors, this parenthetical phrase "(Part or Full Time)."

Code Section 3322, which has not been directly amended, provides that the inspectors shall devote their entire time to the duties of their office, and it could hardly be maintained that such an indefinite expression as the parenthetical phrase is effective as an amendment to that section. But if we attempt to give some sort of reasonable effect to the added words, it does not follow that the State Board of Fisheries would have the right to discontinue the services of an inspector upon the arbitrary ground that his services "are not needed at this time," or to contend that "Part Time" means that the Board could in effect say to an inspector: "Since you have already served about four months of the fiscal year, that is sufficient part time service to permit us to discharge you."

It is quite true that it is provided in Code Section 3310 that the Board shall have authority to adopt and promulgate rules and regulations for the government of the force under their control; and if the General Assembly intended that the Board should provide for part time service, obviously it could only be done by some reasonable rule or regulation stipulating the extent of such service from time to time, and no such rule or regulation was ever adopted. Furthermore, all such inspectors would obviously be entitled to reasonable notice in advance before they could be put on part time duty with part time pay.

But it is unnecessary for us to determine the intent and meaning of the phrase in question, for the simple reason that the plaintiff was not discharged pursuant thereto in any respect whatever, for he was merely notified that his services were not needed.

In answer to the question now before us, we are of opinion that the State Board of Fisheries was without power to discharge the plaintiff or fail to pay his salary, under the undisputed facts shown by the record.

*Question 3. Does Plaintiff's official position terminate at the end of the fical year in which he is appointed and qualifies?*

The record, as we have heretofore stated, is not entirely clear as to when the plaintiff, Langford, was appointed inspector by the Governor, it being merely recited that it was a little over two years before the institution of this action; and it does not appear that he was subsequently reappointed. Hence, at the time this action was commenced he was *holding over*. For we are in full agreement with counsel for the appellant that since the General Assembly saw fit to provide for the office held by the plaintiff through the medium of the Appropriation Acts, the term thereof extends to the end of the fiscal year only.

It is true that there is no statutory provision relating to an inspector holding over until his successor has been appointed or qualified, but we do not thing this affects the status of the plaintiff as a *de facto* officer holding over after the expiration of his term; and it is clear that a *de facto* officer is entitled to the full protection of the law. The case of *Heyward v. Long,* 178 S. C. 351, 183 S. E. 145, 151, 114 A. L. R. 1130, seems to be conclusive on this point, for it was therein held that "one who holds over after the expiration of his legal term, where no provision is made by law for his holding over, is commonly regarded as a *de facto* officer," and it was further held that such *de facto* officers as were involved in that case were entitled to injunctive protection against interference with them in any manner in the performance of their official duties as such.

The general rule is well and correctly stated in 43 Am. Jur. 20 (the *Heyward case, supra,* being cited as one of the supporting authorities), as follows:

"Apart from any constitutional or statutory regulation on the subject, there seems to be a general rule that an incumbent of an office will hold over after the conclusion of his term until the election and qualification of a successor, and this, notwithstanding a provision rendering one elected to an office ineligible to succeed himself."

It follows therefore that while the plaintiff was a *de facto* officer only, and hence immediately upon the appointment and qualification of his successor would have had no right to hold his office any longer, yet until this was done he was entitled to continue in office, subject to the right, however, of the qualified authority to discharge him from his office for reasonable cause after a proper hearing.

*Question 4.. May the Plaintiff be summarily removed without notice and without a hearing?*

Counsel for the appellant contends that since the Legislature has not designated any specific term of office, the plaintiff holds at the will of the appointing body, citing the important case of *State ex rel. Williamson v. Wannamaker,* 213 S. C. 1, 48 S. E. (2d) 601, 604. It is correctly held in that case that as a general rule when the term or tenure of a public officer is not fixed by law, "and the removal is not governed by constitutional or statutory provision, the power of removal is incident to the power to appoint. In other words, the appointing power, where the term is not fixed by law, may remove the appointee at pleasure and without notice or opportunity to be heard." But it is quite clear from what we have hereinbefore indicated that while the general appropriation acts do not, in so many words, say that the term of the inspector's office is for one year, this is the necessary effect of the creation of this office by these annual acts.

Moreover, while the question does not seem to have been raised in the Court below, it is quite clear upon principle, and, as stated in the *Wannamaker case,* the

appointing body only may remove, whether with or without a hearing, as the circumstances may require. The plaintiff, Langford, was appointed pursuant to law by the Governor of the State, and not by the State Board of Fisheries, and hence in attempting to remove him, they clearly exceeded their authority.

This brings us down to the last question which relates only to the four companion cases, this question being as follows:

*Question 5. Was the Court in Jasper County without jurisdiction of the four cases involving the inspectors in Clarendon, Dorchester, Hampton, and Williamsburg Counties?*

Timely objection made in the Court below (and there was no waiver), that the Court was without jurisdiction of the subject matter as to the Clarendon, Dorchester, Hampton and Williamsburg inspectors' cases was based upon the provisions of Code Section 421 to the effect that an action against a public officer for an act done by him in virtue of his office "must be tried in the county where the cause, or some part thereof, arose." Judge Moss was of the opinion, and so ruled, that this section has no application; but we cannot escape the conclusion that he was in error in so holding, and since the question relates to the jurisdiction of the subject matter, we are bound by the law as written in the statute and as heretofore interpreted by this Court. See *Baldwin v. Board of Commissioners,* 196 S. C. 112, 12 S. E. (2d) 846.

This Court held, construing this section, in the case of *Fishburne v. Minott,* 72 S. C. 572, 52 S. E. 646, 647, that an action against a public officer for an act done by him in virtue of his office *must* be tried in the county in which the cause of action or some part thereof arose, subject to the power of the Court to change the venue. The opinion in this case was delivered by Mr. Justice Jones, and he refers to the interesting circumstance that the following words were

originally included in what is now Section 426 relating to the power of the Court to change the place of trial, but were subsequently stricken out by the Act of 1897, 17 Stat. 14: "If the county designated for that purpose in the complaint be not the proper county, the action may notwithstanding be tried therein, unless the defendant before the time for answering expire, demand, in writing, that the trial be had in the proper county, and the place of trial be thereupon changed by consent of parties, or by order of the court, as is provided in this section."

There is, of course, no question whatever as to the jurisdiction of the Court of Common Pleas for Jasper County with reference to the *Langford case,* because the cause of action clearly arose in that County; but it is contended by counsel in behalf of the plaintiffs in the companion cases that the defendant cannot now take the position that the Court was without jurisdiction, having failed to make any motion for a change of venue. This position, however, is untenable, because the law is well settled that the question of jurisdiction of the subject matter may even be raised for the first time upon appeal. *Ware v. Henderson,* 25 S. C. 385. It was timely raised in the instant cases in the Court below, and the failure of the defendant to move the Court to change the venue to the proper counties was not necessary, in view of the statutory amendment of Section 426 above mentioned.

It may further be observed that the suggestion is made by counsel for the plaintiffs in the companion cases that the Court certainly had jurisdiction of the case brought by the Clarendon County inspector, because the 1949 Appropriation Act provides that he shall be "assigned to the Black and Pee Dee Rivers and elsewhere as directed by the Commission." The Black and Pee Dee Rivers, however, do not extend into Jasper County, and there is no sort of evidence that Inspector Evans of Clarendon County had been directed to perform any of his duties in the County

of Jasper. It follows therefore that the fifth question involved, as stated by the appellant, should be answered in the affirmative, and that the orders of the Circuit Court relating to the four cases involving the inspectors in Clarendon, Dorchester, Hampton and Williamsburg Counties should be reversed and the cases remanded to the Court of Common Pleas for Jasper County with instructions to transfer the actions brought by D. M. Evans, W. L. Harbeson, S. J. Thomas, and Blackwell McKenzie, against the defendant to the Courts of Common Pleas for Clarendon County, Dorchester County, Hampton County, and Williamsburg County, respectively, for trial, pursuant to the provisions of Sections 421, and 426, Code 1942.

Accordingly the order of the Circuit Court in the case of *E. R. Langford, Respondent v. State Board of Fisheries, Appellant,* is hereby affirmed, and the orders of the Circuit Court in the four companion cases aforesaid are hereby reversed, and the cases remanded, with instructions as above stated.

FISHBURNE, TAYLOR and OXNER, JJ., concur. STUKES, J., not participating.