16059

SPROUSE v. WINSTON
(46 S. E. (2d) 874)

*Messrs. M. Martin Davis* and *I. H. Jacobson,* of Charleston, for Appellant,

*Messrs. E. L. Willcox* and *William C. Ehrhardt,* of Charleston, for Respondent,

*Messrs. M. Martin Davis* and *I. H. Jacobson,* of Charleston, for Appellant, in reply,

March 12, 1948.

FISHBURNE, J.: This suit in equity was instituted by the appellant against the respondent, having for its object the obtaining of a permanent injunction, restraining the respondent from proceeding with the erection of a garage alleged to be in violation of certain building restrictions covering lots composing Palmetto Gardens, a residential subdivision in or near North Charleston.

A preliminary injunction was granted upon the filing of the complaint. Thereafter the cause was referred to the master in equity for Charleston County, who after taking the testimony decided all issues in favor of the respondent. An appeal was taken to the circuit court, and that court affirmed the report of the master and dissolved the temporary injunction which had been issued on April 3, 1947. This injunction restrained the respondent from proceeding with the removal of his garage to another portion of his lot, which change of location, appellant contended, would be in violation of a restrictive covenant covering the lots of both appellant and respondent.

A map of the subdivision was made on May 6, 1941, and duly recorded in Charleston County; it specifically delineates the location, metes and bounds of each numbered lot. The restrictive covenants covering all of the lots were duly recorded June 16, 1941. The particular restriction which the appellant seeks to enforce is found in Section B, and reads as follows:

"No building shall be located nearer to the front lot line or nearer to the side street line than the building setback lines as shown on the recorded plat. In any event, no building shall be located on any residential building plot nearer than 20 feet to the front lot line, nor nearer than 10 feet to any side street line. No building, except a detached garage or

other outbuilding located on rear 1/4 of lot, shall be located nearer than five feet to any side lot line. On corner lots, garage shall be placed against inside lot line".

The property of the respondent, Winston, is a corner lot, and is thus described in his deed:

"Measuring and containing sixty-two and five-tenths (62.5′) feet in the front line on DuRant Avenue; by the same on the back line one hundred (100′) feet in depth, be the said dimensions more or less.

"Butting and bounding to the Northeast on Lot No. 4 on said plat, to the Southeast on DuRant Avenue; to the Southwest on Holmes Avenue; and to the Northwest on Lot No. 6 on said plat."

The appellant's property immediately adjoins the lot of the respondent on the rear, and fronts on Holmes Avenue. At the time appellant and respondent bought their adjoining lots, all buildings were already constructed thereon. In fact, none of the lots in the subdivision was vacant. When the respondent purchased his lot it was occupied by a dwelling fronting on DuRant Avenue, with its Southwestern line on Holmes Avenue. His garage, which fronted on Holmes Avenue, was located to the rear of his residence thirty feet from that street; twelve feet from the back line, which constituted the boundary line between the lots of the respective parties, and ten feet from the side line on the Northeastern side, which separated it from Lot No. 4 as shown on the map.

After the temporary injunction was dissolved, and although this appeal promptly followed, the respondent proceeded with the removal of his garage and erected it on the location which appellant contends violates the restrictive covenant.

When moved to the new location, the dimensions of the garage were materially increased. Ten feet were added to

the front, and at least three feet to the rear, so that as it now stands, it is thirty-six and five-tenths feet in length and twelve feet in width. It is set back twenty feet from Holmes Avenue, two feet and six inches from the back line of respondent's property, which is the boundary line between him and appellant; and six feet from the inside lot line on the Northeast.

Appellant's dwelling is situated only about ten feet away from the long side of the garage. It is located twenty-five feet from Holmes Avenue, which is the front line of all dwellings on that street. The new location of the garage places it five feet beyond the front of appellant's home, and its overall length of thirty-six and five-tenths feet blocks and overruns the entire side of his house; whereas the original location of respondent's garage was approximately twenty feet from the side of appellant's home, and in length extended parallel only along the rear one-half portion of his house. It is contended that as now situated, the garage blocks the view, light and air of appellant's home on that side, and depreciates the value of the property.

The appellant protested when he ascertained that respondent contemplated changing the location of and enlarging his garage which would bring it ten feet farther toward Holmes Avenue, thus placing at least one-third of the structure outside of and beyond the designated rear one-fourth of the lot, in violation of the restrictive covenant. Respondent ignored the protest, and proceeded with the building of the garage on the new location until stopped by the temporary injunction. As already stated, as soon as the injunction was dissolved, he continued and completed the construction of the garage, which now parallels his back line and extends along the whole length of appellant's home, projecting five feet beyond appellant's building line.

> While we must, of course, in construing any portion of Section 8 of the restrictive covenants, consider the entire provision, our attention is especially directed

to the latter part of it, which reads: "No building, except a detached garage or other outbuilding located on rear 1/4 of lot, shall be located nearer than five feet to any side lot line. On corner lots, garage shall be placed against inside lot line."

In the construction given this provision by the master and by the circuit court, it was held that garages and other outbuildings could be erected anywhere on the rear quarter of any lot except on a corner lot, in which instance it must be set back ten feet from the side street line, and can be placed along either of the two inside lot lines. And it was held that inasmuch as the garage at its new location was situated within the rear quarter of the respondent's corner lot at a distance greater than ten feet from the side street line (Holmes Avenue), there was no violation of the restrictive covenant.

By thus construing the above provision, the lower court held, as did the master, that respondent's corner lot possessed two inside lot lines: its back line, which constitutes the boundary between him and appellant's adjoining property, and the inside lot line which marks the boundary between it and Lot No. 4 on the Northeast side. However, by referring to the provision itself, it will be found that with reference to the location of garages on corner lots, "inside lot line" appears in the singular and not in the plural.

From a careful examination of the restrictive covenant (Section B), in connection with the plat of the property, it seems clear to us that the corner lot of respondent possesses only one inside lot line, and that is the line which runs on the inside separating his lot on the Northeast from Lot No. 4, and which runs opposite to and parallel with the outside line known as Holmes Avenue. It is difficult to see what other construction can be placed upon it. And the description in respondent's deed to this corner lot conforms to this construction. As described therein, he has "sixty-two and five-tenths (62.5') feet in the front line on DuRant Avenue; by the same on the *back* line * * *." So that while it can properly be said that this back line consti-

tutes an inside lot line of appellant's property, which adjoins the rear of respondent's lot, it is equally true that the same boundary line constitutes respondent's back line and not what can fairly be designated as an inside lot line.

By common understanding, it may be said that the front of respondent's corner lot on DuRant Avenue, is that portion opposite the rear of the lot which adjoins the property of appellant, with one side running along Holmes Avenue, and an inside lot line constituting the boundary line between it and Lot No. 4. In other words, this corner lot has a front line (DuRant Avenue), a side street or outside lot line (Holmes Avenue) a back line (between it and appellant); and an inside lot line (between it and Lot No. 4). These lines were established when the residence was originally located on the lot, and are fixed by the description in the deed and the plat.

Now, can Section B of the restrictive covenants be ▆ so construed that a garage on the corner lot can be placed on *any* quarter of the rear portion of the lot? We do not think so. The restrictive covenant not only provides that a garage shall be located on the rear quarter of the lot, but "shall be placed against inside lot line". So that on the corner lot of the respondent the garage should be located on that one-fourth of the rear portion which runs *against* the inside lot line on the Northeast.

The word "against" is susceptible of several meanings, depending to a considerable extent on the connection in which and the purpose for which it is used. Sometimes the word purports direction merely and not physical contact; and in this sense has been defined as meaning "toward". 2 C. J. S., afterward-against, Page 1012. The common grantor of the appellant and respondent, Defense Homes Corporation, appears to have given this construction to the word, because, as already noted, this corporation built the original garage on respondent's corner lot before it was conveyed to him. And it was located not actually in contact with what

we have described as the inside lot line dividing this property from Lot No. 4 on the Northeast; but the back wall was ten feet therefrom, and the front was set back thirty feet from Holmes Avenue. This garage, located on its original site, was fourteen feet from the back line of respondent's dwelling, and approximately fourteen feet from the back line of the lot. As shown by the plat, it was twelve feet wide and approximately twenty-two feet in length.

As now constructed on the new site, the front of the garage· has been extended toward Holmes Avenue an additional distance of ten feet, which places it to that extent outside of and beyond the restricted area. In our opinion, this additional ten feet on the front is in violation of the restrictive covenant.

In *Couch v. Southern Methodist University,* Tex. Civ. App., 1926, 290 S. W. 256, 259, we find the rule relative to restrictions embraced in a deed of dedication to be as follows:

"It may be stated generally that, where a common grantor opens up a tract of land to be sold in lots and blocks, and, before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot, subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration."

The rule of construction applicable here is set forth in 26 C. J. S., Deeds, § 163:

"Restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of a free use of property and against restrictions. This rule, however, obtains only where the par-

ties have failed to express their meaning with sufficient clarity to enable the court to say that its construction is plain and admits of no doubt; the rule will not be applied to defeat the obvious purpose of the restriction, nor does it require an unnatural and strained construction of the words used; and before giving effect to the rule the court will have recourse to every aid, rule, or canon of construction to ascertain the intention of the parties, since it is the duty of courts to enforce, not to make, contracts."

Further quoting C. J. S., Deeds, § 163, it is stated:

"Words used are to be taken in their ordinary and popular sense, unless they have acquired a peculiar and special meaning in the particular relation in which they appear, or with respect to the particular subject matter, or unless it appears from the context that the parties intended to use them in a different sense. * * *"

We find no ambiguity here. It is clear that when appellant purchased his property, he relied upon a general building scheme and restrictions. It is likewise clear that the present location of respondent's garage violates the restrictive covenant to the extent of ten feet, which is the distance its front extends beyond the front line of the old site. As now placed, it blocks the light, view and air of appellant's home, thus reducing to a great extent the value of his property, and causing irreparable injury.

In our opinion, the lower court fell into error. The judgment should be reversed and a mandatory injunction granted directing that ten feet in length be removed from the front of the garage, so that the distance of its front line shall not be closer than thirty feet to Holmes Avenue. This would be in accordance with the location of the front building line of the original garage.

The remedy of injunction is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for

the reason that it will cause some pecuniary loss. Here, the respondent took his chances as to the effect of his conduct, with eyes open to the results which might ensue. As was said in *Springer v. Gaddy*, 172 Va. 533, 2 S. E. (2d) 355, 358:

"It is true that in this class of cases the awarding of an injunction is addressed to the conscience of the court and will not be awarded if to do so would work a hardship out of all proportion to the relief sought. *Cheatham v. Taylor*, 148 Va. 26, 39, 138 S. E. 545. But this rule is not applicable where it clearly appears that an injunction is necessary to prevent one from violating the equitable rights of another where he has notice, actual or constructive, of such rights. *Coleman v. Coleman*, 19 Pa. 100, 57 Am. Dec. 641."

The cause will be remanded so that the appellant may make due application to the circuit court for a mandatory injunction in accordance with the views herein expressed.

Judgment reversed.

BAKER, C.J., and STUKES, TAYLOR, and OXNER, JJ., concur.