19377

Jack H. NANCE et al., Respondents, v. Wallace Hesby WALDROP, Appellant

(187 S. E. (2d) 226)

70

*Eddie R. Harbin, Esq.,* of Greenville, *for Appellant,* 

*C. Victor Pyle, Jr., Esq.,* of *Pyle & Pyle,* Greenville, *for*
*Respondents,* 

March 1, 1972.

LITTLEJOHN, Justice:

The defendant, Wallace Hesby Waldrop, is fee simple owner of a lot located at the intersection of West Lee Road and Wildwood Road in Greenville County. Plaintiff Carolyn E. Staton is the owner of an adjoining lot. The other plaintiffs own property in the residential subdivisions known as Woodland Hills and Wade Hampton Gardens. These subdivisions surround the lots owned by plaintiff Staton and the defendant.

All parties to this action have as a common grantor in their chains of title, one Robert J. Edwards. In 1938, Edwards, as committee and trustee for James M. Edwards, instituted an action in the Court of Common Pleas for Greenville County. He sought approval of the sale of a portion of a 500-acre tract of land. The court's decree provided that all deeds out of Robert J. Edwards as Committee, etc., should contain the following:

"It is understood this conveyance is made subject to the following restrictions which are expressly made a part of the consideration thereof:

"(1) Said property shall be used solely for residential purposes. . . .

"(2) No house shall be erected thereon costing less than Four Thousand Five Hundred ($4,500.00) Dollars."

As a result, the defendant's use of his property is subject to this restriction.

Early in the summer of 1969, the defendant's son, Robert W. Waldrop, began to develop the defendant's lot as a trailer park. This suit was filed in the Court of Common Pleas for Greenville County on August 21, 1969. After commencement of the action, Robert Waldrop placed one

trailer on the defendant's lot and occupied it as his residence. The plaintiffs, individually and on behalf of all others similarly situated, sought to enjoin the defendant from using his property as a trailer park or otherwise in contravention of the restrictive covenant. The lower court granted the injunction. The defendant has appealed.

The case was tried before the Master in Equity. At the hearing, Robert Waldrop appeared, representing his father under a power of attorney. He testified that his plan to use the defendant's lot as a trailer park had been abandoned. He did, however, plan to continue to occupy his trailer and to allow his sister to place another trailer on the lot for use as her residence.

Upon this appeal the defendant submits four questions for our determination. Under the view we take we need answer only one basic inquiry: May the defendant move a mobile home, trailer-type residential unit, onto the lot and occupy it as a residence without violating the restrictions quoted above? We agree with the Master and the trial judge that the restriction has been violated.

In construing covenants such as the one involved here, we attempt to give effect to the intent of the parties. It is proper to consider the overall plan. Such intent should, as nearly as possible, be gleaned from the instrument itself. However, the circumstances surrounding the origin of covenants should also be considered. *Cheves v. City Council of Charleston,* 140 S. C. 423, 138 S. E. 867 (1927).

What, then, were the circumstances in 1938 when the restriction with which we are concerned was born? One circumstance was the fact that the trailer, or mobile home, was virtually unknown. "The mobile home is a novel development of the mid-twentieth century." *Swigart v. Richards,* 178 N. E. (2d) 109 (Court of Common Pleas of Ohio, Licking County, 1961). It can be said with near certainty that the question of whether trailers should

be permitted on this property was not even considered by the parties or the court in the 1938 litigation out of which the restriction was whelped. Does this mean that the restriction in defendant's deed should not be interpreted so as to prohibit the placing of a house trailer on defendant's lot? We think not.

The area where plaintiffs' and defendant's property is located has developed as a residential section. The houses that have been constructed therein are permanent in nature and rather substantial in size. Such was the situation when the trailer was placed on defendant's lot.

The use in the restrictions of the words "residential", "house" and "erected" indicate an intent on the part of the creator of the covenant that structures in the nature of conventional homes be built.

Similar situations have arisen in other jurisdictions. In *Pagel v. Gisi*, 132 Colo. 181, 286 P. (2d) 636 (1955), an order that the defendant should move his house trailer was affirmed. There the court was enforcing a restriction that the property be used only for dwelling houses costing not less than $4,000.00. The court said:

"When the defendant moved his house trailer on the premises be placed thereon not a permanent home but . . . 'a portable unit designed to be hauled from place to place by an automobile or truck and would detract from and reduce the value of any residential area where it is permitted to be located. It belongs in a trailer court where such ambulatory units are permitted.' "

Pagel was cited in *Swigart v. Richards, supra*. There the restrictive covenant was of pre-1946 vintage and read:

"No building shall be erected or maintained upon any lot except one residence designed and used for occupation by a single family and not more than one and one-half stories in height . . ."

"Fundamentally," the court said, "the question is what did the parties intend by the language used." The parties to the

action conceded that state law as to how such language applied to mobile homes was non-existent. The court noted that:

"The mobile home mode of living has created many social and economic problems resulting in a great amount of regulatory legislation over the country, conflicting and confusing court decisions, some perhaps due in some degree to unfamiliar knowledge of factors involved and lack of guiding precedent.

\* \* \*

". . . Regulations relating to the mobile home as a dwelling with the progress of the coming years will no doubt require re-valuation of existing regulatory laws, zoning, and taxation measure with respect to the public welfare. . . ." The court concluded that an injunction prohibiting the placing of a mobile home on the defendant's lot should be granted.

The Master's report contains the following observation:

"The testimony is uncontradicted that this trailer does not constitute a permanent part of the Defendant's property. It rests on concrete blocks with no concrete slab under them; the axle remains on the trailer with only the tires being removed and stored on the property; and in addition, Robert W. Waldrop testified he wants nothing permanent on the lot which would have to be removed since he intends at some subsequent date to build a permanent house thereon."

The evidence warrants the conclusion that a general building scheme or plan of development founded on these restrictions has evolved in the area here in question. The plaintiffs in this action and their predecessors in title have obviously relied upon the restrictions in buying and developing the property. The circumstances surrounding the inception of the restrictions and the developments subsequent thereto enforce the argument that the restrictions as drawn

were designed and intended to prevent uses such as the defendant is making of his lot.

The judgment of the lower court is therefore

Affirmed.

Moss, C. J., and Lewis, J., concur.

Brailsford and Bussey, JJ., dissent.

Brailsford, Justice (dissenting):

Disagreeing with Justice Littlejohn's interpretation of the restrictive covenants, I respectfully dissent.

The respondents concede that the appellant is using his property for residential purposes. Hence, only the second restrictive covenant is at issue. On appeal, the respondents adhere to the position they took in the court below, that "there cannot be a house erected (on appellant's lot) costing less than ($4,500.00) and, therefore, no trailer (is) permitted on the property." Respondents repeatedly assert that the appellant's mobile home, which essentially maintains its mobile character while in use on appellant's lot, has not been "erected" on the lot within the meaning of the second restriction. On that premise, the respondents reason that the presence of the mobile home is "violative of the second (restriction) inasmuch as Appellant did not erect a house" costing $4,500.00.

But the second restriction does not require that a house be built on the lot; it only prohibits the erection of one costing less than the specified amount. *Cf. Donald E. Baltz, Inc. v. R. V. Chandler & Co.,* 248 S. C. 484, 489, 151 S. E. (2d) 441, 444 (1966). The respondents' argument comes to this—that appellant's mobile home is *not* a "house" which has been "erected." Under their own theory of the case, respondents must fail; for if appellant has not erected a house costing less than $4,500.00, he has not broken the covenant.

We continue to follow the rule that " 'restrictions as to the use of real estate should be strictly construed and all

doubts resolved in favor of free use of the property; such covenants, however, should not be construed so as to defeat the plain and obvious purpose of the contractual instrument. *McDonald v. Welborn,* 220 S. C. 10, 66 S. E. (2d) 327; *Maxwell v. Smith,* 228 S. C. 182, 89 S. E. (2d) 280.' *Cothran v. Stroman,* 246 S. C. 42, 44, 142 S. E. (2d) 368." *Donald E. Baltz, Inc. v. R. V. Chandler & Co.,* 248 S. C. 484, 487-488, 151 S. E. (2d) 441, 443 (1966). I agree with Justice Littlejohn that the restriction at issue, written in 1938, probably was drafted without thought of mobile homes, but cannot conclude with him that "the plain and obvious purpose" of the restriction was to proscribe them. Our function is to construe the covenant as written, not to divine what the parties might have written if their minds had adverted to the contingency which has arisen.

Restrictive covenant cases "present such wide differences in circumstance that, in the main, each case must be decided on its own facts." *Baltz, supra,* 248 N. C. at 489, 151 S. E. (2d) at 444. No case precisely in point has been found, but the facts in *Schaeffer v. Gatling,* 243 Miss. 155, 137 So. (2d) 819 (1962), are clearly analogous. I quote from the opinion:

"The house trailer is being used 'strictly for residential purposes.' . . . If the original owner of the subdivision had desired to prohibit the use of house trailers as residences, this could easily have been accomplished by designating house trailers as prohibited use, or by restricting architectural design, or by placing a minimum on the floor space for a residence, or by prohibiting temporary residences. None of these things were done." 137 So. (2d) at 820.

Justice Littlejohn cites an Ohio decision resting partly on an expressed desire to mitigate social problems spawned by the advent of mobile home living. Certainly, social needs weigh strongly when common law courts fashion or modify rules of law. But our judicial authority in the present case is limited to interpreting and enforcing the restrictions in

appellant's chain of title in light of applicable rules of construction. Regulating the use of mobile homes, however needful that may be, is the responsibility of other departments of government.

Finally, the fact that respondents rely on a general plan of development instituted by a common grantor adds nothing to the scope of the covenant at issue. The presence of a general developmental scheme cannot expand the restriction beyond its own terms. The general scheme principle is effective to supply restrictions occasionally omitted from deeds in a subdivision, and to bestow standing upon other property owners to enforce the restrictions which have been imposed, but not to re-write the restrictions themselves.

In my view, the injunction prohibits a use of appellant's property not excluded by the covenants in his deed. I would reverse the order appealed from.

BUSSEY, J., concur.