## 19763

Ralph HOFFMAN, as Trustees, Respondent, v.
Henry COHEN et al., Appellants
(202 S. E. (2d) 363)

*Messrs. Grimes, Hinds & Cowan,* of Georgetown, *for Appellants,*

*John C. Thompson, Esq.,* of Conway, *for Respondent,*

January 28, 1974.

LITTLEJOHN, Justice:

This class action was instituted by the respondent, Ralph Hoffman, as Trustee, for a declaratory judgment holding that the proposed construction of a high-rise condominium apartment building, containing 62 dwelling units, upon certain lands owned by him in the Forest Dunes Subdivision of Myrtle Beach would not violate the restrictive covenants imposed upon that subdivision by its original developer. The defendants-appellants are lot owners in the subdivision and were made parties individually and as representatives of all other lot owners.

The issues were referred to the Master in Equity for Horry County, who recommended that the court declare that such a condominium is permissible under the appli-

cable restrictions. His recommendation was accepted by the circuit court and incorporated into its order, from which this appeal is prosecuted by the defendants.

The Forest Dunes Subdivision was originally developed by Myrtle Beach Farms Company in 1941. It fronts on the Atlantic Ocean approximately 1900 feet, with a depth, running back to U. S. Highway No. 17, of approximately 1550 feet. A map of the subdivision indicates that there are approximately 185 lots, nearly all of which have a width of 75 feet and a depth of 150 feet. All but three of the 20 lots which front on the Atlantic Ocean have a width of 75 feet and a depth of approximately 260 feet. The property upon which the respondent proposes to build the condominium is composed of two beach-front lots each 75 feet by 260 feet, plus an adjoining area designated "reserved", which is slightly larger than one of the platted lots. They lie in the southeastern corner of the subdivision, facing the strand and fronting on the ocean. It is uncontradicted that all deeds executed by the developer to all lots in Forest Dunes, including those owned by the respondent, contain the same restrictive covenants, which provide in pertinent part as follows:

"a. No lot shall be subdivided and no residence or building, including porches and projections of any kind, shall be erected so as to extend beyond, over or across any of the building lines relating to said lot.

\* \* \*

"e. This property shall be used for residential purposes only and any residence erected on the lot herein conveyed is to cost not less than Six Thousand ($6,000.00) Dollars or to be built according to plans and specifications approved by grantor hereof in writing by its proper officers.

\* \* \*

"g. No lot shall be subdivided, or its boundary lines changed except with written consent of the grantor endorsed on the deed of conveyance thereof.

"h. The conditions, limitations, and restrictions hereinabove made shall be deemed covenants running with the land binding on both the grantor and grantee, their heirs, successors and assigns."

Single-family residences are the rule in the subdivision, the principal exception being a two-story building containing five separate dwelling units constructed upon the lot which lies immediately to the north of the respondent's property.

The respondent proposes to construct a building estimated to cost $3,000,000.00. The first floor would be partially underground and used for parking; the main, or ground floor, would have two apartments and a recreation room, manager's quarters and service areas. Above that would be 15 floors composed of four apartment units each. There would be two elevators in the building. Common facilities for the unit owners include a lobby, a recreation room, parking garage, elevators, hallways, foyer, utility rooms, swimming pool, shuffleboard courts and other related recreational facilities.

The appellants submit four questions for our determination. Under the view we take, we need answer only one basic inquiry: Would the proposed condominium violate the restrictions quoted hereinabove? We think that it would and, accordingly, reverse the order of the trial court.

Restrictive covenants are contractual in nature. The cardinal rule of construction in interpreting any contract is to ascertain and give effect to the intention of the parties. Such intent should, as nearly as possible, be gleaned from the instrument itself. *Nance v. Waldrop*, 258 S. C. 69, 187 S. E. (2d) 226 (1972).

The respondent asserts that the language in the restrictions in question is unambiguous. Because multi-family dwellings, including condominiums, clearly constitute a permissible use, his argument continues, there is no room for construction and no need to resort to matters outside the restrictions themselves. We disagree.

We cannot say that reasonable men could not differ as to the meaning of the language employed.

The respondent argues that conventional apartment-type buildings are permitted under the restrictions and that the only difference between a conventional apartment house and a condominium-type of apartment building lies in the fact that normally an apartment building has one owner, whereas a condominium-type apartment building has many owners. He further urges that some three owners have built two living units on their lots and that one has built five units on his lot. The question of whether a conventional apartment-type building would be permitted in this subdivision is not before the Court at this time, but we cannot agree that there are no basic differences between a conventional apartment building and a condominium apartment building. We think that the building of 62 dwelling units on what amounts to approximately three building lots is entirely inconsistent with the overall scheme of the subdivision. Though a condominium is not strictly speaking a commercial project, it involves congestion and many of the undesirable characteristics incident to a commercial undertaking such as a hotel. It is common knowledge that beach residences, especially apartments (conventional or condominium), are often rented to temporary guests at least a part of the year. When so used in a building of this type, the property would become a commercial-type operation, inconsistent, we think, with the whole tenor of the restrictions.

The respondent correctly relies upon *Sprouse v. Winston*, 212 S. C. 176, 46 S. E. (2d) 874 (1948), for the proposition that restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them. However, it was also held therein that "the rule will not be applied to defeat the obvious purpose of the restriction" and, before giving it effect, "the court will have recourse to every aid, rule, or canon of construction to ascertain the intention of the parties . . . ."

See also *Edwards v. Surratt,* 228 S. C. 512, 90 S. E. (2) 906 (1956).

> In construing covenants the circumstances surrounding their origin are proper considerations for a court when the language used is susceptible of more than one reasonable interpretation. See, e. g., *Nance v. Waldrop, supra; City of Greenville v. Washington American League Baseball Club,* 205 S. C. 495, 32 S. E. (2d) 777 (1945). The concept of condominiums is relatively new to South Carolina; in fact, it was only eleven years ago that the "Horizontal Property Act" was enacted by our legislature. See 11 S. C. Code § 57-494 et seq. (Cum. Supp. 1971). It is a virtual certainty that the question of whether condominiums should be permitted on this property was not even considered by the developer in 1941 when these restrictions were whelped. It is not unexpected that an ambiguity might arise when language employed to cover the situation as it existed over thirty years ago is applied to such a recent innovation.

It has also been stated that "where there is any ambiguity in a contract, or where there is doubt as to the proper construction thereof, the construction placed thereon by the parties themselves is entitled to great, if not controlling, influence." *Stackhouse v. Pure Oil Co.,* 176 S. C. 318, 180 S. E. 188 (1935). With reference specifically to the area of restrictive covenants, a similar idea was expressed in Nance when we held, "It is proper to consider the overall plan," meaning, of course, the overall plan of the subdivision as conceived and carried out.

The Forest Dunes Subdivision is now a rather fully developed subdivision consisting almost exclusively of single-family residences. So far as the record shows no contest has been made concerning those lots whereon more than one residential unit has been constructed. The houses that have been constructed therein are rather substantial in size, with an average value of approximately $50,000.00.

"The evidence warrants the conclusion that a general building scheme or plan of development founded on these restrictions has evolved in the area here in question. The [appellants] in this action and their predecessors in title have obviously relied upon the restrictions in buying and developing the property. The circumstances surrounding the inception of the restrictions and the developments subsequent thereto enforce the argument that the restrictions as drawn were designed and intended to prevent such uses as the [respondent proposes to make of his lots]. *Nance v. Waldrop, supra.*

Reversed.

Moss, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting) :

Being of the view that the issues in this cause were correctly decided below, I most respectfully dissent. Prior to July 7, 1970, the particular area of Myrtle Beach was zoned as "single family residential" by the City of Myrtle Beach. On that date, the city amended its zoning ordinance, over the objection of at least some of the appellants in this proceeding, so as to permit condominiums in the area. It is true that Forest Dunes Subdivision has developed basically, but not exclusively, as a single family residence neighborhood, there having been some violations of the zoning ordinance. It is clearly inferable that it so developed because of the zoning ordinance rather than because of anything contained in the restrictive covenants.

As I see it, the appellants, in essence, are asking the Court to do what the city has declined to do: to-wit: keep the area zoned for "single family residence" purposes. They correctly concede that the phrase "for residential purposes only" does not limit the use of these lots to single family dwellings, because such phrase has been almost universally interpreted to designate the character of the use and not the

quantity, and that such phrase alone would not ordinarily limit the number of units on a lot so long as they are used as residences. 26 C. J. S. Deeds § 164(3)(c), p. 1121; 14 A. L. R. (2d) 1403.

Appellants argue, however, that the proposed use of the lots is not residential in character, but commercial, and that the use of the word "residence" in the singular, rather than the plural, in two places in the restrictions has the effect of limiting the use of the lots to "single family residential use". No in point authority is cited for either of these contentions.

With the possible exception of *Nance v. Waldrop,* 258 S. C. 69, 187 S. E. (2d) 226, which I conceive to be clearly distinguishable factually, none of the authorities cited in the majority opinion are, I think, in point or supportive of the result reached. In my view, there is nothing in the restrictions that can soundly be construed as precluding the construction of an apartment building in the area, or limiting the size thereof.

Although condominiums were not known in South Carolina at the time the restrictions were written, apartment buildings certainly were. It seems clear to me that the proposed condominium is not nearly so commercial in its characteristics as would be an apartment building of the same size. Had the developer intended or contemplated restricting the lots to use for the purpose of "single family residences" or to either prohibit or limit the size of apartment buildings, it would have been relatively simple to so expressly state. The construction placed upon a contract by the parties themselves is, of course, entitled to weight, but the development of the area as primarily one of single family residences perforce the zoning ordinance of the City of Myrtle Beach throws no light whatever on the intention of the parties.

The weight of well reasoned authority is in accord with the following language from 26 C. J. S. Deeds § 163, p. 1102:

"The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms, *even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.*" (Emphasis added.) See *Forest Land Co. v. Black,* 216 S. C. 255, 57 S. E. (2d) 420.

It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property, subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument. It follows, of course, that where the language of the restrictions is equally capable of two or more different constructions that construction will be adopted which least restricts the use of the property. *McDonald v. Welborn,* 220 S. C. 10, 66 S. E. (2d) 327; *Maxwell v. Smith,* 228 S. C. 182, 89 S. E. (2d) 280; *Cothran v. Stroman,* 246 S. C. 42, 142 S. E. (2d) 368; *Baltz, Inc. v. R. V. Chandler & Co.,* 248 S. C. 484, 151 S. E. (2d) 441; *Edwards v. Surratt,* 228 S. C. 512, 90 S. E. (2d) 906. Neither the appellants nor the majority opinion point to any language in the restrictions expressing a "plain and obvious purpose" to restrict the use of lots in the area to "single family residences only", and no such plain and obvious purpose being reflected in the restrictions, there is no occasion for us to refrain from applying the rule of strict construction.

In conclusion, the proposed condominium is basically and fundamentally residential in nature and there is, I submit, nothing in the record to indicate that it has or will come to have such commercial aspects as constitute a violation

of the restriction that the property be used for "residential purposes only". Certainly, the provision of certain minimal facilities for the joint use of the various owners of the condominium units does not make the project a commercial one. Estimated cost of the individual two and three bedroom units ranges from sixty thousand dollars to one hundred thousand dollars per unit. There is no evidence in the record that the rental of any of these units is contemplated. While some rentals will no doubt occur, the very cost of the units suggests the likelihood that any rentals will be minimal.

BRAILSFORD, J., concurs.