1541

George R. ERKES, James David Quinn, Jr., Grady Lee Quinn, II, Deborah Q. Mathes, and Traci Q. Duffy, Appellants v. Gene A. KASPAREK, Danella G. Kasparek, Ralph A. Gustafson, Judith R. Gustafson, Dan W. Grimmitt, Eugene C. Neal, Gladys Gantt Neal, Ernest F. Roach, Jr., Catherine Morton Dawkins, Robert W. Woodhurst, Geneva F. Woodhurst, Bobby B. Grimmitt, Michelle H. Whiteside, Walter J. Wolff, Amantha R. Wolff, Michael L. Bailey, Jane R. Bailey, Dorothy R. Morton, Catherine W. Roach, James T. Collins, Betty Mahaffey Collins, Barbara F. Pursley, Martha Faulconer Pursley, Joanne C. Dillingham, Maryanne M. Heath, Ann R. Ridgeway, Ernest Ray Hammond, Judson Ross Lawrence, Mary Lorraine Rice Lawrence, Darrell W. McDaniel, Karen R. McDaniel, Guy F. McFadden, Patricia N. McFadden, Mary A. Rice, Respondents.

(399 S.E. (2d) 6)

Court of Appeals

*S. Jackson Kimball* and *John P. Gettys*, Rock Hill, *for appellants.*

*Bruce M. Poore*, York, *for respondents.*

Heard March 20, 1990.

Decided Sept. 17, 1990.

*Per Curiam:*

This is a declaratory judgment action. George R. Erkes and James D. Quinn, Jr., developers of a subdivision, seek to have certain amendments to restrictive covenants on the subdivision which the residents purported to enact declared null and void. The matter was referred to a Special Referee who recommended the amendments be cancelled. The circuit court rejected this recommendation and upheld the amendments. The developers appeal. We reverse.

The facts are undisputed. In 1952, the developers and a third partner purchased a 176 acre tract of land for future development. In 1955, they placed restrictive covenants on the use and development of the land and began to sell lots. The restrictive covenants provided that the developers:

> . . . restrict the following described property, part of which has been cut into lots, and the balance of which will be cut into lots from time to time hereafter. . . .

Later, the third partner conveyed his interest in the land to the developers.

In 1960, and again in 1963, the developers amended the restrictive covenants. The amendments established a minimum cost for dwellings placed on the lots and minimum building set back lines, respectively.

In 1987, the residents drafted and recorded a third set of amendments. Among other things, the amendments establish a minimum lot size for the subdivision. We must determine whether these amendments are binding on the developers with respect to the balance of the land not yet subdivided. We decide they are not.

First, nothing in the record indicates the residents have the power to dictate the minimum lot size into which the retained property may be subdivided.[1] A power over property, such as that claimed by the residents, can be conferred only by an instrument executed with the same formalities as would be necessary for the disposition of the property they purport to restrict. *Home Sales v. City of N. Myrtle Beach*, 299 S.C. 70, 77, 382 S.E. (2d) 463, 467 (Ct. App. 1989). No such instrument exists. The residents cannot exercise a power they were never given.

Second, the provision in the restrictive covenants that "the balance of [the property] will be cut into lots from time to time" must be construed as a reservation of an unrestricted right of the developers to subdivide the land.

---

[1]The residents argue a minimum lot size is mandated by the set back lines created in the second set of amendments. One resident testified that the lots had to be a "certain size" in order to comply with the set back lines. This witness did not state what the "certain size" was. Also, the witness conceded that the developers made not specific representation to her concerning lot size when she purchased her lots.

Restrictive covenants are contractual in nature. The cardinal rule of construction in interpreting any contract is to ascertain and give effect to the intention of the parties. Such intent should be gleaned, as nearly as possible, from the instrument itself. *Hoffman v. Cohen,* 262 S.C. 71, 75, 202 S.E. (2d) 363, 365 (1974). In this case, the developers clearly intended to reserve in themselves the right to subdivide. This intent appeared in the restrictions in unambiguous language. The residents accepted their respective deeds subject to this right. They cannot now be judicially relieved of what may seem an improvident bargain. *Rosi v. McCoy,* 79 N.C. App. 311, 314, 338 S.E. (2d) 792, 794 (1986).

Finally, the residents may not impose additional restrictions on the undeveloped land, but may only amend those restrictions contained in the restrictive covenants. The residents' purported amendments do not amend the restrictive covenants, but improperly add to them.

The restrictive covenants state that "any of the conditions, restrictions, and covenants herein contained may be changed, or amended. . . ." The residents cannot place new restrictions on the land under the guise of amendment. Restrictions on the use of property are strictly construed, with all doubts resolved in favor of the free use of the property. *Hamilton v. CCM, Inc.,* 274 S.C. 152, 158, 263 S.E. (2d) 378, 381 (1980). In the first and second sets of amendments, the developers amended existing restrictions contained in the restrictive covenants. They did not add new restrictions. The restrictive covenants do not contain any restriction establishing lot size. Therefore, the purported amendment by the residents cannot restrict lot size on the unsubdivided land under the terms of the restrictive covenants.

Because we reverse the circuit court's ruling for the reasons stated, we need not reach the other issues presented in this appeal.

Reversed.