On 22 July, 1922, the Charlotte Consolidated Construction Company, conveyed a lot on East Morehead and Oriole avenues or streets to Z. V. Kendrick and wife. The land was divided into two lots. The plaintiff owns lot B fronting on Oriole Avenue and the defendant owns lot A at the intersection of Oriole Avenue and East Morehead Street. Both the plaintiff and the defendant derived the title from Kendrick. The deeds from Kendrick to the plaintiff and defendant contained among others the following restrictions: "The lots of land hereby conveyed shall be used for residential purposes only and not otherwise, and there shall not at any one time be more than one residence or dwelling-house on any one *Page 653 
lot," etc. The defendant proposes to erect on his lot an apartment house several stories in height. Whereupon the plaintiff instituted the present action to restrain the defendant from so doing upon the ground that the construction of an apartment house would violate the restrictions contained in the deed. The defendant contended that the restrictions were not enforceable because the character of the community had been changed by the expansion of the city resulting in a fundamental change in the essential character of the property referred to.
The controversy was submitted to the trial judge who found that the restrictions had been violated in many instances set out in his findings and that in the development there were gas stations, a woman's club building, grocery stores, a large laundry building, a market, and apartment houses, one large apartment house having been erected just across the street in front of the property in controversy and another contemplated on Oriole Street.
After setting out the various violations of the restrictions the court further finds as follows: "The court further finds as a fact that the character of the community has been changed by the expansion of the city and the spread of industry and other causes resulting in a substantial subversion or fundamental change in the essential character of the property herein referred to. That changed conditions resulting from the natural growth of the city bringing industry, traffic and apartment houses, clubs, mosques, and churches into such close proximity to the restricted area or property herein described as to render it undesirable for the purpose to which it is restricted. That violations of the restrictions have been so general as to indicate and in fact do indicate the purpose and intention on the part of the residents of the community to abandon the general scheme or purpose in this immediate section. . . . The court further finds as a fact that it is inequitable and unjust to require the enforcement of the restrictions and that it is detrimental and injurious to the market value of the property, and if said restrictions are permitted to continue, that it will retard the advancement and upbuilding of the property for the purposes for which it can be best used."
From the judgment so rendered plaintiff appealed.
There is no allegation and no finding of fact to the effect that the property in controversy was a part of a general plan or scheme. The trial judge found as a fact that by reason of the growth and expansion of the city the essential nature and character of the property *Page 654 
has been changed. The record discloses ample evidence to support the findings of the trial judge. These findings of fact bring the case squarely within the principle announced by this Court in Starkey v. Gardner,194 N.C. 74, 138 S.E. 408. In that case it was said: "The weight of authority is to the effect that if substantial, radical and fundamental changes have taken place in a development protected by restrictive covenants that courts of equity will not enforce the restriction. The underlying reason is, we apprehend, that such changes destroy the uniformity of the plan and the equal protection of the restriction."
The authorities upon the subject are set out in the Starkey case and we deem it unnecessary to repeat them here.
Affirmed.