16259

ARCHAMBAULT *ET AL.* v. SPROUSE

(55 S. E. (2d) 70)

*Messrs. M. Martin Davis and I. H. Jacobson,* of Charleston, *for Appellant,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

September 6, 1949.

FISHBURNE, Justice.

This is a suit in equity, brought to enforce compliance with certain restrictions as to buildings, imposed in deeds of the several lots comprising a residential subdivision known as Palmetto Gardens which is located in or near North Charleston.

Plaintiffs and the defendant are resident lot owners of the subdivision. And, for the purposes of this appeal, it may be assumed that the entire development, including the property of all parties to this suit, is subject to certain restrictive covenants limiting the use to which the property may be put, and the number and character of buildings which may be erected on each lot.

The defendant, it is alleged, is violating these covenants in the following particulars:

(a) By proceeding to erect at the rear of his lot a two-story garage apartment, in addition to the residence already on the lot;

(b) By proceeding to erect a garage or outbuildings for residential purposes;

(c) By proceeding to erect a structure containing less than the minimum required ground-floor area.

After alleging that the defendant had been requested to cease and desist from proceeding with the stated violations, and that defendant's wrongful actions will depreciate the value of plaintiff's property, obstruct their light, air and view, plaintiffs allege that they have no adequate remedy at law, and pray for a permanent injunction restraining the defendant from using the garage apartment in violation of the restrictions, and requiring him to remove so much of the structure as constitutes a violation thereof.

The defendant denied the material allegations of the complaint and set up four affirmative defenses thereto, only three of which are involved in this appeal. He alleges:

(1) On information and belief, that plaintiffs are members of the Palmetto Gardens Civic Club, a group composed solely of property owners in Palmetto Gardens; that at a meeting of the Club held on February 8, 1949, at which plaintiffs or some of them were present, a resolution was passed wherein it was declared that all current violations of the restrictive covenants be considered closed issues, and that no action be taken thereon.

(2) On information and belief, that numerous property owners in Palmetto Gardens, including plaintiffs, or some of them, have heretofore and are now violating the restrictive covenants, (a) by permitting trailers and shacks on their premises, (b) by altering their buildings and garages, (c) by using their property for business, and (d) by building garages nearer than five feet to the side lot line.

(3) That defendant was issued a North Charleston Magistrate's building permit on October 15, 1948, and that the plaintiffs are guilty of laches and of sleeping on their rights in failing to be more diligent in taking the action necessary to prevent the defendant from erecting his garage apartment and before he had expended several thousand dollars in doing so.

Plaintiffs duly moved to strike the foregoing defenses from the answer as being sham and irrelevant. This motion

was heard by the trial court and granted. The court held that even if the allegations of the three defenses were proved to be true, they would not constitute a defense to the cause of action set forth in the complaint. By this appeal, the defendant challenges the correctness of that ruling. The defendant contends that the three affirmative defenses set up by him are good and meritorious, and that the allegations made are sufficient to raise the issues of waiver, estoppel, laches and acquiescence. These issues present questions of law, and their determination depends upon whether the allegations if proved would sustain the plaintiff's contention.

Cases involving building restrictions and their alleged violation present such wide difference in facts that, in equity, but few rules can be applied generally. In the main, each case must be determined on its own facts. There is no hard and fast rule as to what constitutes waiver and laches.

If there has been unreasonable delay in asserting claims, or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or, if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked. It would be contrary to equity and good conscience to enforce such rights when a defendant has been led to suppose by the word, silence or conduct of the plaintiff that there was no objection to his operations. Diligence is an essential prerequisite to equitable relief of this nature. Quiescence will be a bar when good faith requires vigilance. But so long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can be no laches. Upon the discovery of infringement of rights, such reasonable expedition is required in their prompt

assertion as is consistent with due deliberation as to the proper means for relief.

On the other hand, one who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts. After the right has been invaded under circumstances which would not defeat a plaintiff in seeking relief, and no substantial harm is shown to have accrued to the wrongdoer from delay, there is not the same imminent necessity for early enforcement of demands as exists before conditions have become fixed. Mere lapse of time, although an important, is not necessarily a decisive, consideration. Within the somewhat flexible limitations of these general rules what may be laches and waiver in any case depends upon its peculiar facts. *Stewart v. Finkelstone,* 206 Mass. 28, 92 N. E. 37, 28 L. R. A., N. S., 634, 138 Am. St. Rep. 370; *Curtis v. Rubin,* 244 Ill. 88, 91 N. E. 84, 135 Am. St. Rep. 307; *Johnson v. Robertson,* 156 Iowa 64, 135 N. W. 585. Ann. Cas. 1915 B, 137, 14 Am. Jur., Sec. 295, Page 644; 43 C. J. S., Injunctions, § 87 bb, page 586.

The general rule should likewise be stated that the violation of some of the less important restrictions, but not the restriction in question, by some of the plaintiffs does not deprive them, much less the other plaintiffs, of the right to relief in equity. *Bacon v. Sandberg,* 179 Mass. 396, 60 N. E. 936; *Snow v. Van Dam,* 291 Mass. 477, 197 N. E. 224; *Pitts v. Brown,* S. C. 1949, 54 S. E. (2d) 538.

The restrictive covenants which bind all of the lot owners. are contained in a general deed executed by the common grantor, Defense Homes Corporation, dated June 16, 1941, and recorded June 25, 1941, in the R. M. C. Office for Charleston County, in Book I-41, at Page 703. Section A, which the defendant is charged with having violated, pro-

vides: "A. All lots in the tract shall be known and described as residential lots. No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars and storage. Buildings incidental to residential use may be erected."

Plaintiffs allege that defendant has a residential building located on the front of his lot and is now engaged in erecting and building a two-story garage apartment at the rear of his lot, in violation of the provisions of Section A, which specifically prohibits more than one residential structure on a residential lot. We assume as a fact from the defendant's pleading, that the building constructed by him at the rear of his lot is a garage apartment. He denies that it constitutes a violation of the covenant. Whether or not its erection violates Paragraph A of the restrictive covenants, we are not called upon to determine in this appeal, as this issue is not presented.

The defendant alleges, among other things, that he obtained a building permit for the erection of his garage apartment from a local magistrate on October 15, 1948. But it is not alleged on what date construction commenced. The meeting of the Palmetto Gardens Civic Club was held on February 8, 1949, and this action was commenced on March 1, 1949. He argues that the plaintiffs, or some of them, are bound by the resolution adopted by the Gardens Club, and thereby have waived the enforcement of the building restrictions.

All of the issues presented by the appeal involve the defenses of waiver, laches, estoppel and acquiescence under various and diverse circumstances, which it seems to us can best be determined by a trial on the merits. It might be that a strict construction of defendant's affirmative defenses, under the applicable rules of law, would be adverse to him, but

we are not disposed at this stage of the case to define and determine the rights of the parties merely on the pleadings.

It is recognized that striking a pleading is a severe remedy and should be resorted to only in cases palpably requiring it for the administration of justice. The remedy will be granted only when the defect is plain, for where there is a semblance of a cause of action or defense set up in the pleading, its sufficiency cannot be determined on motion to strike out. 41 Am. Jur., Sec. 354, Page 532.

The difficulty encountered in passing on these issues now, as matters of law, is fairly well indicated by considering some of the facts necessary to be proved. For instance, at what stage of the construction of the defendant's garage apartment could plaintiffs have reasonably determined that such building definitely constituted a violation of the restrictive covenants?

The determination of this, and other questions relating to waiver, will depend upon the evidence or lack of evidence.

In our opinion, the Palmetto Gardens Civic Club has no official status, but there is still the question as to whether or not the plaintiffs, as individuals, by action or inaction, might have caused the defendant to change his position to his prejudice.

In our opinion, the three affirmative defenses contain allegations sufficient to raise the issue of waiver, laches and acquiescence, and for this reason we reverse the judgment of the lower court.

Judgment reversed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.