16525

McDONALD *ET AL.* v. WELBORN *ET AL.*
(66 S. E. (2d) 327)

*Messrs. Mann, Arnold & Mann,* of Greenville, *for Appellants,*

*Messrs. Love, Thornton & Blythe,* of Greenville, *for Respondents,*

July 26, 1951.

FISHBURNE, Justice.

This is an appeal from a decree of the county court of Greenville County, awarding a mandatory injunction against the defendants, J. F. Welborn and J. F. Welborn, Jr., commanding them to remove certain buildings in process of

construction on their adjoining lots, Nos. 3, 4, 5, 6, and 7 of Block A, in a residential subdivision known as Woodville Heights. The mandatory injunction was awarded upon the ground that the erection of buildings to be used for commercial purposes violated building restrictions applicable to these lots. It was stipulated by counsel for the case to be heard before the county court upon the pleadings, submitted affidavits, and all pertinent records of Greenville County. The parties will be referred to as plaintiffs and defendants.

In 1940, H. H. Willis acquired a large tract of land two miles west of the city limits of Greenville out of which he created a subdivision to which he gave the name Woodside Heights. This land was subdivided and platted into blocks, lots and streets, and the plat thereof was duly recorded in Greenville County on June 16, 1941, in Plat Book L., at Pages 14 and 15.

The tract was subdivided by Willis, as shown by the record, pursuant to a general scheme or plan adopted by him for the benefit of all future owners of lots in the subdivision. Willis conveyed about 75 lots subject to certain specific restrictions referred to in the deeds to the different purchasers. The lots conveyed by him between 1941 and 1944, were scattered throughout the seven or eight blocks comprising the subdivision. In every conveyance made by him, it was recited that the lots were sold subject to the restrictions recorded in the register's office in Greenville County in Deed Book 229, at Page 335, specifically applicable to Woodville Heights. This instrument was spread upon the records on January 16, 1941, before any portion of the property was sold. It was not signed, witnessed or probated. Immediately below this recorded instrument, an addenda thereto was recorded January 28, 1941, and was signed by Henderson and Martin, who as real estate agents, sold the property to Willis. They had charge of the property for him in its subdivision, platting and sale. The record shows that they were exclusive agents for this purpose, and while all deeds to the

property were signed by Willis, it was Henderson and Martin who interviewed prospective purchasers and effected the sale of lots.

Among the restrictive covenants referred to above, are those confining the use of the lots comprising the whole subdivision to residential purposes, and prohibiting such use as would constitute a nuisance to the neighborhood. These restrictive covenants are similar in tenor to covenants of this nature generally and through Henderson and Martin were approved by the Federal Housing Administration. By such approval, prospective purchasers were enabled to procure loans for the building of dwelling houses.

It is the first of these restriction, Paragraph A, which the plaintiffs charge the defendants with having violated. It is alleged and admitted that the defendants Welborn, over the written protest of the plaintiffs served on January 27, 1950, erected a shavings shed in connection with a sawmill owned and operated by them, separated from this subdivision by a public road; and thereafter began the construction of a dry kiln plant on Lots 3, 4, 5, 6 and 7 of Section A of the subdivision.

The plaintiffs are all lot owners in this exclusive residential subdivision and own their own dwelling houses, which consist of nice new homes selling at a price range of from $7,000.00 to $10,000.00; and which are almost exclusively owner occupied. It is further alleged that to permit the defendants to violate the restrictive covenant which prohibits the use of any lot for any purpose other than dwellings, would greatly diminish the value of all the lots, and would result in irreparable loss. It should also be stated that the record shows than in connection with the sale of all of the 75 lots conveyed to various purchasers by Willis, the benefit of the restrictive covenants was used as a sales argument to the prospective purchasers, and that they bought on the faith that the restrictions applied to all the lots in Woodville Heights.

Lots 6 and 7 of Section A, now owned by the Welborns, were conveyed by Willis to C. L. Greene, by conveyances which included this specific provision following the description of the lots: "This property is sold subject to the restrictions now recorded against this property in Book 229, at Page 335, RMC Office for Greenville County, South Carolina." These deeds also make specific reference to the plat of Woodville Heights recorded in the RMC Office for Greenville County. Greene in turn conveyed these two lots to the defendants, incorporating in the deed the identical provision just quoted, and made reference to the book and page containing the restrictive covenants.

It is contended by the defendants that the instrument containing the recorded restrictions is one which affects realty, and that it was not signed by the owner and not witnessed. It is further asserted that the recordation of the instrument was a nullity in that it was not legally entitled to record because of not having been probated, and for that reason could not operate as constructive notice of its contents. See 1942 Code, Sections 897, 3632, and 3637, and *Franklin Sav. & Loan Co. v. Riddle,* 216 S. C. 367, 57 S. E. (2d) 910.

Assuming that the instrument containing the restrictive covenants was irregularly recorded, we do not concede that the question of the regularity of its recording is vital to the issue of notice and knowledge under the facts of this case. In the main, the question is, did the defendants have notice of the fact that Woodville Heights was restricted to residential purposes? Defendants overlook that this instrument was incorporated by direct reference to book and page of its recordation, not only in the deed by Greene to the defendants, but in the deeds of all of the purchasers of the 75 lots sold by Willis, the original owner and grantor. And regardless of whether the restrictive covenants were properly recorded, they by reference constituted a part of the deed to each grantee.

The law imputes to a purchaser of real estate notice of the recitals contained in the written instruments forming his chain of title, *C. Aultman & Co. v. Utsey,* 34 S. C. 559, 13 S. E. 848; and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references therein contained. Generally, the means of knowledge and the duty of using them are equivalent to knowledge. *Moyle v. Campbell,* 126 S. C. 180, 119 S. E. 186. If there are circumstances sufficient to put the party upon inquiry, he is held to have notice of everthing which the inquiry, properly conducted, would certainly disclose. *City of Greenvile v. Washington American L. B. Club,* 205 S. C. 495, 32 S. E. (2d) 777.

Here the restrictive covenants contained in a separate instrument, specifically referred to in defendants' deed and easily to be found of record, were just as fully and effectually a part of defendant's deed as if copied therein. 16 Am. Jur., Sec. 273, Page 593.

It follows that to all intents and purposes, the defendants had actual notice of the restrictive covenants applicable to Lots 6 and 7 owned by them. By the recitals, they were definitely put upon inquiry which would have led to actual knowledge.

The record also fully shows that the defendants had actual knowledge of the existence of the general scheme and uniform plan of development for the benefit of all lot owners in Woodville Heights. They had bought lots other than the ones in question, and the deeds thereto made reference to the rstrictive covenants. The defendants made conveyance of such lots to others, and incorporated in their deeds substantially the same reference to the restrictions of record. When they decided, in defiance of the recorded instrument, to use the lots in question for commerical purposes, they first asked Mr., Henderson, who was the member

of the firm which sold the lots, to consent to such violation; this he refused to do.

A somewhat different situation pertains to Lots 3, 4, and 5, Section A, owned by the defendants, but the difference is immaterial.

The record shows that Willis, after having disposed of some 75 of the lots, including Lots 6 and 7, Section A, made a blanket conveyance of the remaining lots, consisting of approximately 100, to N. O. McDowell in settlement of some interest which McDowell owned in the subdivision. Thereafter, N. O. McDowell conveyed all of these lots to N. O. McDowell, Jr. and W. T. Henderson. In neither of these two deeds was any reference made to the recorded restrictions. However, the grantees, N. O. McDowell, Jr. and W. T. Henderson recognized and adopted without variation the Willis plan of restrictions and covenants as recorded. In each and every conveyance made by them of lots in Woodville Heights, a recital was inserted to the effect that the property was sold subject to all restrictions, with direction to see the records of Greenville County.

Lots 3, 4, and 5 were thus conveyed by McDowell & Henderson to C. L. Greene, with the provision,—"This property is sold subject to all restrictions, rights of way and easements now recorded against this property (See: Record Greenville County, S. C.)".

C. L. Green thereafter conveyed the same lots to the defendants, with no mention of restrictions, but with direct reference to the fact that the property was known as Woodville Heights as shown by the plat for a more accurate description. The deed from Greene to the defendants contained also this statement: "This being a portion of the property conveyed to me by N. O. McDowell, Jr. and W. T. Henderson," giving the date and the book and page of record. This last mentioned deed constituted a link in the chain of title of the defendants, and they are directly charged with notice of the recitals referred to in the convey-

ance made by McDowell, Jr. and Henderson to Greene. In fact, Lots 3, 4, and 5, Section A, were conveyed by Greene to the defendants in the same deed with Lots 6 and 7. Immediately following the description of lots 6 and 7 the recital is made that they are sold subject to the restrictions recorded in Book 229, at Page 335. So that there was simply no way for the defendants to escape notice and knowledge that these lots in Section A, owned by them, were subject to the building restrictions which bound all property owners in Woodville Heights.

Nor in our opinion is there any merit in the contention that the building restrictions are invalid as being in violation of the statute of frauds, 1942 Code, Section 7042. There are various methods of creating restrictions upon the use of property by a purchaser. It was pointed out in *Sprouse v. Winston*, 212 S. C. 176, 46 S. E. (2d) 874, that where a common grantor opens up a tract of land to be sold in lots and blocks, and before any lots are sold, he inaugurates a general scheme of improvements for such entire tract intended to enhance the value of each lot, and each lot subsequently sold by such grantor, is made subject to such scheme of improvements, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there is mutuality of covenant and consideration. As we see it, the statute of frauds does not preclude such restrictions as may be included in a general scheme.

It is well settled in this state that where the owner of a tract of land subdivides it and sells the distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable ease-

ments are created. *Pitts v. Brown,* 215 S. C. 122, 54 S. E. (2d.) 538; 26 C. J. S., Deeds, § 167, Page 542.

The rule that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of the free use of property, should not be applied in such a way as to defeat the plain and obvious purpose of a contractual instrument of restriction. 14 Am. Jur., Sec. 212, Page 621; *Sprouse v. Winston,* 212 S. C. 176, 46 S. E. (2d) 874; *Archambault v. Sprouse,* 215 S. C. 336, 55 S. E. (2d) 70, 12 A. L. R. (2d) 388.

Defendants contend that the deed of Willis of the 110 lots in Woodville Heights to McDowell and Henderson, with no mention of restriction, had the effect of destroying the original plan. Under the facts of this case, we cannot agree with this contention. But even if this position were sound, McDowell and Henderson continued the original plan of development, and in every deed to every lot conveyed by them, they made reference to the restrictions of record.

Defendants contend that the restrictions have been disregarded by some other property owners within the area, and that there has been no effort on the part of plaintiffs to enforce them. Because of such acquiescence, it is claimed that plaintiffs are estopped to complain of the violation by defendants. These violations by some owners in the subdivision are of a minor character, and are not controlling or conclusive on the plaintiffs, as is pointed out in *Pitts v. Brown,* 215 S. C. 122, 54 S. E. (2d) 538, and *Archambault v. Sprouse,* 215 S. C. 336, 55 S. E. (2d) 70, 12 A. L. R. (2d) 388.

We have given careful attention to the record in this case and to the various issues presented and discussed in the briefs of counsel. After mature consideration, we affirm the decree of the county court of Greenville County.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and E. H. HENDERSON. A. A. J., concur.