## W. P. SHUFORD v. ASHEVILLE OIL COMPANY.

(Filed 21 March, 1956.)

**1. Deeds § 16b—**

Where the grantor's deed to one lot out of a tract of land owned by him stipulates that the restrictive covenants therein contained should not impose any restrictions on the grantor's other property adjacent to the lot conveyed or in its vicinity, the deed negatives a general scheme of development, and only the grantor therein is entitled to enforce the restrictions.

**2. Same—Plaintiff held estopped by subsequent agreement from enforcing residential restrictions in deed.**

Plaintiff, owning land within and adjacent to a residential subdivision, entered into an agreement with an owner of other lots within the subdivision and other lands adjacent thereto, stipulating that the lots within the subdivision should be subject to residential restrictions, and further stipulating, for the benefit of the owners of lots in the subdivision, that the lands adjacent to the subdivision shown on the plat should be used for residential and neighborhood business purposes, with specific limitations as to height and distance from the street of buildings used for neighborhood business purposes, and providing that the covenants should run with the land. Defendant's predecessors in title, who had purchased land adjacent to the subdivision by deed containing residential restrictions, which land was described in the agreement and shown on the plat referred to, joined in the agreement. *Held:* Plaintiff, by acquiescing in the agreement and accepting benefits thereunder, waived his right to enforce the residential restrictions against defendant, nor may plaintiff maintain that the agreement was executed solely to place restrictions on lots within the subdivision in the face of its specific reference and provisions as to lands shown on the plat outside the subdivision.

**3. Estoppel § 6a—**

A party will not be allowed to accept the benefits arising from certain terms of a contract and at the same time deny the effect of other terms of the same agreement.

**4. Same: Deeds § 16b—Subsequent deed to other lands held not to affect modification of restrictions in original deed.**

Plaintiff conveyed land to defendant's predecessors in title by deed containing residential restrictions. Thereafter, the residential restrictions were modified by agreement permitting use of the property for neighborhood business purposes. Subsequent to the agreement, plaintiff conveyed to defendant's predecessors in title a small strip of land lying to the rear of the lots first conveyed purporting to make such strip of land subject to the restrictions set out in the original deed. *Held:* Since the second deed does not purport to convey to defendant's predecessors in title any portion of the property conveyed by the original deed, the second deed is not a reaffirmance of the restrictions contained in the original deed. Further, change in the character of the neighborhood for the purpose of invoking the equitable right to have the restrictions declared unenforceable will be

considered from the date of the original deed in regard to the land therein conveyed.

**5. Deeds § 16b—**

Restrictive covenants are to be strictly construed against the covenantee.

**6. Same—**

Where the growth of a city and the change in the character of the neighborhood renders land conveyed by deed containing residential restrictions no longer suitable for residential purposes, so that it would be oppressive and inequitable to give effect to such restrictions, equity will no longer enforce them.

**7. Same—**

A valid restriction upon the use of property is not superseded or nullified by the enactment of a zoning ordinance, but such ordinance may be considered with other competent evidence in determining whether or not there has been a fundamental change in the character of the neighborhood.

**8. Same—**

Evidence in this case *held* to support the court's finding that there had been such fundamental change in the character of the neighborhood as to render the enforcement of residential restrictions in the deed in question oppressive and inequitable.

**9. Injunctions § 8—**

Where, upon the hearing of a motion to show cause why a temporary restraining order should not be continued to the hearing, the evidence supports the court's conclusion that plaintiff is not entitled to the ultimate equity sought, the court, in its discretion, may dissolve the temporary restraining order.

APPEAL by plaintiff from *Nettles, J.,* August Term, 1955, of BUNCOMBE.

This is an action instituted by the plaintiff to enforce certain restrictions inserted in a deed from the plaintiff to the grantors of the defendant, which restrictions the plaintiff alleges are still in full force and effect.

On the hearing below to show cause, if any, why the temporary restraining order entered on 19 August, 1955, should not be continued to the hearing, this cause was heard upon the complaint and answer, used as affidavits, and certain documentary evidence introduced by the respective parties.

The essential facts found by the court below are as follows:

"1. That on the 16th day of September 1949 the plaintiff executed and delivered to Harold C. Wilburn, Chester Brown, Jr. and Jack H. Brown, a deed of conveyance which was recorded in the office of the Register of Deeds of Buncombe County, State of North Carolina in Book of Deeds No. 681, at page 81, . . . (The description of the lot

conveyed and the restrictions contained in the above deed are in the following language) :

"BEGINNING at a point in the North right-of-way line of the new 150-foot wide State Highway, as the same is presently located, said point being north 53 deg. 58' east two hundred (200) feet from the intersection of said present north right-of-way line of the new State Highway with the east edge or margin of Johnston Boulevard, and runs north 36 deg. 02' west one hundred thirty (130) feet to a point; thence north 28 deg. 10' east two hundred and thirty-five (235) feet to a point; thence south 79 deg. 15' east one hundred and fifty (150) feet to a point; thence south 52 deg. 00' east fifty (50) feet to a point; thence south 36 deg. 02' east seventy (70) feet to a point in the present north right-of-way line of the aforementioned new State Highway; thence with the present north right-of-way of said new State Highway South 53 deg. 58' west three hundred and twenty-five feet to the BEGINNING.

"The grantees, as a part of the consideration for this conveyance, covenant and agree for themselves, their heirs, and assigns that the above described real estate shall be used for residential purposes only, and that no portion thereof, or any buildings or building erected thereon, shall be used or permitted to be used for commercial purposes. It is understood between the parties hereto that the term 'residential' shall include single or multiple dwellings and apartment houses. This covenant shall be a covenant running with the land and shall be kept by the parties of the second part, their heirs and assigns forever. The grantor, his heirs and assigns, hereby expressly retains the right to modify, at any time in the future, the restrictions imposed upon the lands herein described, and nothing herein contained shall be construed as imposing any covenants and restrictions on any property of the grantor adjacent to or in the vicinity of the land herein described. . . .

"2. That thereafter, on the 19th day of December 1949, the aforementioned Harold C. Wilburn and wife, Marcene Y. Wilburn, W. P. Shuford, Jack H. Brown and wife, Hope Brown, and Chester Brown, Jr. and wife, Martha Brown, executed a certain contract which is recorded in the office of the Register of Deeds of Buncombe County, State of North Carolina, in Book of Deeds No. 687, at page 323, which, among other things, contained the following recitals:

"THAT WHEREAS, Harold C. Wilburn is the owner of Lots 1 to 24, inclusive, and W. P. Shuford is the owner of Lots 25 through 33, and Lots 43, 44 and 45 of a plat of Section 1 of Wilshire Park, which plat is recorded in Buncombe County Register's Office in plat book 24, at page 61, and

"WHEREAS, Wilburn and Shuford desire for the benefit of their property and for the benefit of future purchasers and owners of the land

shown on said plat that the same shall be developed and used exclusively as hereinafter set out."

The foregoing agreement "placed certain restrictions on the lots in Wilshire Park above-mentioned, and thereinafter recited that Wilburn and Brown owned the property involved in this action 'which is adjacent to such subdivision,' and thereinafter contained the following recitals:

"AND WHEREAS, it is desired for the benefit of the present and future owners of said particularly described property, and for the benefit of present and future owners of the lots in the above referred to subdivision that the following restrictions shall be placed on said particularly described property. (Being the property now in controversy.) . . .

"1. No structure of any kind whatsoever shall be erected or maintained on said particularly described property, except dwellings conforming to all the covenants above set forth (being the restrictions placed on the lots in Wilshire Park) and/or retail stores, filling stations, theatres, beauty shops, barber shops, dry-cleaning and laundry plants (which dry-cleaning and laundry plants shall not employ more than five persons), studios, offices, and any other legitimate business establishments that may be desirable to a retail shopping center.

"2. No building shall be located nearer than thirty-five feet to the northern margin of the right of way of the new State Highway, except the pumps of a filling station may be located within twenty-five (25) feet of the northern margin of such right of way.

"3. No building shall exceed one story or twenty-five feet in height, except cupolas and towers. No store, shop or theatre or any other building above set forth shall have a sign affixed at right angles to the structure, or which extends above the cornice of the roof. No free standing sign or billboard shall be erected or maintained on the above particularly described land.

"Nothing herein contained shall be construed as imposing any covenants and restrictions on any property of the parties hereto other than those properties to which these restrictive covenants specifically apply.

"These covenants are to be covenants running with the land and shall be binding on all of the parties hereto and on all persons, firms or corporations claiming by, through or under them until January 1, 1985, at which time said covenants shall be automatically extended for successive periods of ten years, unless by vote of a majority of the then owners of the lots in the subdivision it is agreed to change said covenants in whole or in part.

"IT IS UNDERSTOOD AND AGREED that W. P. Shuford joins in the execution of this instrument solely and only for the purpose of placing subdivision restrictions on the above referred to subdivided lots in

Wilshire Park and for no other purpose whatsoever; and thereinafter all of the parties above mentioned, including the plaintiff, executed, acknowledged and delivered, and caused to be registered, the said contract.

"3. That thereafter, on the 15th day of February 1951 the above-mentioned W. P. Shuford, as party of the first part, and the above-mentioned Harold C. Wilburn and wife, Marcene Y. Wilburn, Chester Brown, Jr. and wife, Martha Brown, Jack H. Brown and wife, Hope Brown, as parties of the second part, together with Wilshire Homes, Inc., as party of the third part, executed a deed of conveyance (which is duly recorded in Book No. 704, at page 121) which corrected certain lines between the property involved herein and lots owned by the other parties to said conveyance, and which contained (among other things) the following language: . . .

"FIRST: The party of the first part hereby conveys to the party of the second part that strip of land which is located between the southern and southwestern margins of Lots 25, 26, 27, 28 and 16 of the above referred to plat, and the eastern and southeastern margins of the property conveyed to the parties of the second part by the above referred to deed recorded in book 681, at page 87, which property is conveyed and accepted subject to the same restrictions set forth in said deed, which restrictions shall be covenants running with the land. . . .

"4. That thereafter, on the 24th day of April 1951, Wilshire Homes, Inc. and W. P. Shuford, the plaintiff, entered into a supplemental agreement which was recorded in the office of the Register of Deeds of Buncombe County, State of North Carolina in Book 705, at page 547, in which the contract hereinbefore referred to and recorded in deed book 687, at page 323, was referred to and recognized, and Wilshire Homes, Inc. and the plaintiff agreed that certain lots owned by Wilshire Homes, Inc. and also by the plaintiff should be subjected to the same restrictions as were contained in the contract recorded in Book 687, at page 323, as applied to the numbered lots in said Wilshire Park.

"5. That at the time of the execution of the contract referred to in paragraph 2 hereof, the said W. P. Shuford owned lots 25 through 33 and lots 43, 44 and 45 of a plat of Section 1 of Wilshire Park, recorded in the office of the Register of Deeds of Buncombe County, State of North Carolina in Plat Book 24, at page 61; that on the said date, the said Harold C. Wilburn owned lots 1 to 24 inclusive in said development; that the said W. P. Shuford also owned a lot at the northeast corner of new Patton Avenue and Johnston Boulevard, and adjoining the lot involved in this action, and Harold C. Wilburn and wife, Jack H. Brown and wife, and Chester Brown and wife, owned the lot in controversy in this action; that said lot in controversy in this action

was not at any time incorporated as a part of the Wilshire Park development.

"6. That since the execution of the contract set forth in paragraph 2 hereof, the said W. P. Shuford has sold all of his lots in the Wilshire Park development, but still owns the lot at the northeast corner of new Patton Avenue and Johnston Boulevard, and also owns another lot on the corner directly across Patton Avenue from the lot owned by him last above-mentioned.

"7. That on the 29th day of October 1954, the aforementioned Harold C. Wilburn and wife, Marcene Y. Wilburn, Chester Brown, Jr. and wife, Martha Brown, and Jack H. Brown and wife, Hope Brown, executed and delivered to the defendant a deed of conveyance for the property involved in this controversy, which said deed of conveyance is recorded in the office of the Register of Deeds of Buncombe County, State of North Carolina, in Book of Deeds No. 751, at page 21, with full covenants and warranty, but containing the following language: 'This conveyance is made subject to restrictions of record, if any, affecting the above described property.'

"8. That at the time of the execution of the deed of conveyance referred to in Finding of Fact No. 1, there was no open street extending from the lower end of Patton Avenue on the east side of the French Broad River across said river and connecting with Haywood Road west of the property involved herein, and that all of said section later traversed by new Patton Avenue was exclusively a residential and undeveloped rural section, with no business houses of consequence in said territory.

"9. That subsequent to the execution and delivery of the deed of conveyance referred to in paragraph 1 hereof, a new bridge was completed across the French Broad River, and a new main thoroughfare opened and paved and extended through said undeveloped territory from the lower end of Patton Avenue on the east side of the French Broad River to a junction of Haywood Road in the west section of West Asheville, and that upon the opening of said thoroughfare there was a very rapid development of business houses along said thoroughfare, and that as a result thereof the character of the community in which the lot in controversy is located, and in fact, all of the new portion of Patton Avenue, has been changed by the expansion and spread of business to such an extent as to result in a substantial subversion and fundamental change in the essential character of the property, and that many business enterprises have been erected along said street and in the neighborhood of the property involved herein, so that it has become a heavily used business section; that many filling stations have been erected along said thoroughfare, and also many restaurants,

21—243

SHUFORD v. OIL Co.

retail establishments, wholesale distributing centers, and that new and additional shopping centers are in the process of construction. That the plaintiff has contributed to the above-mentioned fundamental change in conditions—among other things—erecting two filling stations on said new street—one on the northeast corner of Patton Avenue and Johnston Boulevard, and immediately adjacent to the lot involved herein—and another on the corner of said Patton Avenue directly opposite the filling station above-mentioned. That subsequent to the deed above-mentioned the lot on said Patton Avenue immediately opposite the lot in controversy, which was zoned as a residential lot at the time of the execution of said deed of conveyance, was re-zoned by the authorities of the City of Asheville on December 3, 1953, and a filling station erected thereon. That on or near the southwest corner, and diagonally opposite from the first mentioned W. P. Shuford filling station, there has been erected, subsequent to said deed of conveyance, another filling station on property which was restricted to residential purposes, and that since the execution of said deed practically all of that portion of new Patton Avenue lying in the limits of the City of Asheville, has been re-zoned or recommended for re-zoning, from residential property to neighborhood trading areas, and that on the 30th day of June 1955, the City of Asheville re-zoned the property involved herein and changed it from a residential section to a neighborhood trading area. . . .

"10. That the character of the community has changed to such an extent as to result in a substantial subversion and fundamental change in the essential character of the property herein referred to; that the changed condition resulted from the opening up of said street and the growth of business along the same, and in the community in which the said property is located, and in close proximity thereto, is of such character as to render the property involved herein undesirable for the purpose for which it was restricted, if there were any restrictions, and to such an extent that it would be inequitable and unjust to require the enforcement of the restrictions referred to in paragraph 1 hereof, if they ever were valid, and that it would be detrimental and injurious to the market value of the property and would retard the advancement and up-building of the property for the purposes for which it can best be used, and would retard the advancement and up-building of the community generally.

"11. That in the Fall of 1954 and immediately, or shortly after the purchase of said property as herein set forth by the defendant, the said defendant excavated and levelled off said property for the purpose of erecting business buildings thereon, and the plaintiff was informed of the purpose of the defendant shortly after the purchase of said property, and thereafter the defendant applied to have the property re-zoned for

SHUFORD *v.* OIL CO.

a neighborhood trading area as hereinbefore set forth, and there was a hearing on said application by the Zoning Commission, after public notice, and thereafter the Council of the City of Asheville had a public

MAP SHOWING LOCATION OF
STRUCTURES-HAYWOOD ROAD
PATTON AVE. & JOHNSTON BLVD.
ASHEVILLE   N. C.
AUG. 22, 1955 - SCALE = 1"=100'
R. J. MARTIN,
Reg. Surveyor

EXHIBIT "B"
Numbered Lots are in
Section 1 of Wilshire Park

hearing thereon, after due advertisement thereof, and the said property involved was duly re-zoned as a neighborhood trading area, and thereafter the defendant's lessee completed the erection of one business house, which has been leased for business purposes, and had done considerable work and expended considerable funds on the erection of a gasoline service station before he was notified by the plaintiff of any intention to attempt to prevent such use and before this suit was instituted.

"12. That the plaintiff acquiesced in the agreement referred to in Finding of Fact No. 2 hereof, and also acknowledged receipt of benefits under said contract, and actually did receive benefits under said contract.

"13. That an enforcement of the restrictions set forth in paragraph 1, if the same were ever valid, would retard general business development and the establishment of commercial enterprises and industries.

"14. That the inconvenience and damage that would result to the defendant and to the community would be much greater than the benefit that would accrue to the plaintiff from the issuance of an injunction at this time.

"15. . . .

"16. That attached hereto is a map which is a map of the property in controversy and the other property adjacent or in close proximity to the property involved in this suit, which is marked EXHIBIT B.

"And the court, being further of the opinion that the defendant should not be restrained as prayed in the complaint;

"IT IS THEREFORE, ORDERED AND ADJUDGED in the discretion of the court that the application of the plaintiff for a continuance of the temporary injunction be and the same is hereby denied, and that the temporary injunction hitherto issued in this case be and the same is hereby dissolved."

From the foregoing judgment the plaintiff appeals, assigning error.

*Harkins, Van Winkle, Walton & Buck for plaintiff.*
*Williams & Williams for defendant.*

DENNY, J. The court below, in refusing to continue the temporary restraining order until the final hearing, rested its decision on two grounds: (1) On the acquiescence of plaintiff in the changes made in the restrictions in the deed executed by him on 16 September, 1949, to Harold C. Wilburn, Chester Brown, Jr., and Jack H. Brown, the grantors of the defendant, by the contract entered into by and between the grantor and the grantees in said deed on 19 December, 1949; and (2) on the finding of fact to the effect that the character of the com-

munity has changed to such an extent since the execution of the above deed that it would be inequitable and unjust to require the enforcement of the restrictions referred to in said deed, if they are otherwise valid.

The restrictions in the original deed from W. P. Shuford to Harold C. Wilburn, Chester Brown, Jr., and Jack H. Brown, dated 16 September, 1949, did not contain a stipulation to the effect that such restrictions were inserted for the benefit of other land to be sold by the grantor, or for the benefit of the grantees therein. On the contrary, the grantor reserved to himself, his heirs and assigns, the right to modify, at any time in the future, the restrictions imposed upon the lot conveyed, and further set forth in said deed that nothing contained therein should be construed as imposing any covenants and restrictions on any property of the grantor adjacent to or in the vicinity of the land conveyed. These provisions clearly negative the idea of a general plan for the development of a residential area in which restrictions were to be applied alike to the grantees and other purchasers of property from the grantor. *Maples v. Horton,* 239 N.C. 394, 80 S.E. 2d 38; *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620; *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895; *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697.

It follows, therefore, that upon the facts disclosed by the record on this appeal, the plaintiff is the only person who is entitled to an order restraining the defendant from violating the restrictions set out in the above deed, if such restrictions are in effect at this time and are enforceable in equity. *Maples v. Horton, supra; Phillips v. Wearn, supra; Thomas v. Rogers,* 191 N.C. 736, 133 S.E. 18.

In our opinion, however, if it be conceded that the restrictions contained in the deed executed by the plaintiff on 16 September, 1949, were valid, the plaintiff has waived his right to enforce them by acquiescing in the changes made in said restrictions in the contract entered into by and between him and Harold C. Wilburn, Chester Brown, Jr., and Jack H. Brown on 19 December, 1949, which contract expressly permits the construction of filling stations and other enumerated structures on the premises in controversy. Thompson on Real Property (Perm. Ed.), Vol. 7, section 3647, page 137; 14 Am. Jur., Covenants, Conditions and Restrictions, section 295, page 644; *Bigham v. Winnick,* 288 Mich. 620, 286 N.W. 102; *Ballard v. Kitchen,* 128 W. Va. 276, 36 S.E. 2d 390. *Cf. Hamburger v. Kramp,* 268 Mich. 611, 256 N.W. 566.

The plaintiff takes the position that he signed the above contract solely and exclusively for the purpose of placing subdivision restrictions on the lots owned by him in Wilshire Park, and for no other purpose whatsoever. We are not unmindful of the statement in the contract purporting to limit the purpose of his signature thereto. Even

so, such attempt to limit the purpose for which he executed the contract, serves to emphasize the fact that he was familiar with the contents of the agreement and knew that the other parties thereto had, by the terms of the contract, modified or changed the restrictions applicable to said lot in material respect. Therefore, his execution of the contract is sufficient to estop him from denying knowledge of its provisions. 19 Am. Jur., Estoppel, section 21, page 619.

The contract states, "Whereas, Wilburn and Shuford desire for the benefit of their property and for the benefit of future purchasers and owners of the land shown on said plat that the same shall be developed and used exclusively as hereinafter set out." The plat referred to is a plat of Section 1 of Wilshire Park, recorded in Book 24, at page 61, in the office of the Register of Deeds of Buncombe County. The lot now in controversy is shown on the map of Section 1 of the Wilshire Park as accurately by metes and bounds as are the lots within the subdivision. And it will be noted that the benefits to be derived from the restrictions thereinafter set out were not limited to the lots in Wilshire Park owned by Wilburn and Shuford, but applied "to the land shown on said plat," which shows 45 lots in the proposed residential development, the lot now in controversy, which has a frontage of 325 feet on the north side of the right of way of the then proposed highway and which is now an extension of Patton Avenue, and the lot still owned by the plaintiff adjacent to the lot owned by the defendant, which has a frontage of 200 feet on Patton Avenue.

Furthermore, this contract, with respect to the restrictions imposed, also states, "These covenants are covenants running with the land and shall be binding on all of the parties hereto and on all persons, firms or corporations claiming by, through or under them," etc. Here again, Shuford, the plaintiff, did not undertake to limit the covenants and restrictions set out in the agreement to the lots in the subdivision only. "These covenants" embrace all the covenants and restrictions set out in the instrument and purport to bind the parties thereto until January 1, 1985, at which time a majority of the owners of the lots in the subdivision may agree to change the covenants in whole or in part. Chester Brown, Jr., and Jack H. Brown never owned any lots in Wilshire Park. They joined in the execution of this instrument in order to get the restrictions modified with respect to the lot now in controversy. Otherwise, there was no reason whatever for them to join in the execution of the contract.

In light of the provisions of the foregoing contract, we hold that Finding of Fact No. 12, to the effect that the plaintiff acquiesced in the above agreement and acknowledged receipt of benefits thereunder, and that he actually did receive benefits thereunder, is supported by com-

petent evidence. Consequently, we hold that the plaintiff is now estopped from challenging the validity of the restrictions contained in such agreement.

As to the second question posed, the appellant contends that the grantors of the defendant, by accepting the deed executed on 15 February, 1951, reaffirmed the restrictions as being applicable to the land described in the original deed as well as to the additional land conveyed thereby. We do not so hold. It is true that the second deed conveyed to the defendant's grantors a small strip of land lying between the rear of the lots referred to in the deed and the lot previously conveyed to defendant's grantors, and purports to make such strip of land subject to the restrictions set out in the original deed. But the second deed does not purport to convey to the defendant's predecessors in title any portion of the property described and conveyed by the deed executed on 16 September, 1949. Hence, the above contention will not be upheld as to the land described in the original deed.

The appellant also contends that any change in the character of the neighborhood that occurred prior to the execution of the second deed to the defendant's grantors on 15 February, 1951, may not be considered in determining whether or not the neighborhood has undergone such fundamental changes that it would be inequitable and unjust to require the enforcement of the restrictions contained in the original deed, if they are otherwise in full force and effect, citing *Reilly v. Otto,* 108 Mich. 330, 66 N.W. 228; *Rice v. Brehm,* 158 Misc. 672, 287 N.Y.S. 648; *Starmount v. Memorial Park,* 233 N.C. 613, 65 S.E. 2d 134, 25 A.L.R. 2d 898. We do not concur in this view. Neither are the above cases controlling on the facts in the present case. The court below properly took into consideration all changes occurring in the character of the neighborhood since 16 September, 1949.

Usually, cases involving alleged violations of building restrictions present such wide difference in facts it is difficult in equity to lay out specific rules that can be applied generally. Ordinarily, each case must be determined on its own facts. *Archambault v. Sprouse,* 215 S.C. 336, 55 S.E. 2d 70, 12 A.L.R. 2d 388. However, in considering restrictive covenants, we adhere to the rule that such covenants being in derogation of the free and unfettered use of the land are to be strictly construed in favor of the unrestricted use of the property. *Craven County v. Trust Co., supra; Edney v. Powers,* 224 N.C. 441, 31 S.E. 2d 372; *Davis v. Robinson, supra;* and cases cited. Furthermore, when it is evident that the purpose of inserting restrictions in a deed is to make the locality a suitable one for residential purposes, but owing to the general growth of the city this purpose can no longer be accomplished, even though such restrictions should be rigidly enforced, it would be oppressive and

inequitable to give effect to such restrictions were they otherwise in full force and effect. *Bass v. Hunter*, 216 N.C. 505, 5 S.E. 2d 558; *Elrod v. Phillips*, 214 N.C. 472, 199 S.E. 722; *Oldham v. McPheeters*, 203 N.C. 141, 164 S.E. 731; *Stroupe v. Truesdell*, 196 N.C. 303, 145 S.E. 925; *Higgins v. Hough*, 195 N.C. 652, 143 S.E. 212; *Starkey v. Gardner*, 194 N.C. 74, 138 S.E. 408, 54 A.L.R. 806; 26 C.J.S., Deeds, section 171 (c), page 574; 14 Am. Jur., Covenants, Conditions and Restrictions, section 302, page 646.

A valid restriction upon the use of property is not superseded or nullified by the enactment of a zoning ordinance. However, such ordinance may be considered with other competent evidence in determining whether or not there has been a fundamental change in the restricted subdivision, 26 C.J.S., Deeds, section 171, page 577, or in the neighborhood where the property, as in the present case, is not a part of a restricted subdivision. *Bass v. Hunter, supra, Elrod v. Phillips, supra. Cf. Brenizer v. Stephens*, 220 N.C. 395, 17 S.E. 2d 471.

We have carefully considered the findings of the court below with respect to the fundamental changes that have taken place in the area adjacent to and in the immediate neighborhood in which the lot in controversy is located, and have come to the conclusion that the pertinent findings of the court in respect thereto are supported by competent evidence and that such findings support the judgment. Hence, the judgment, in which the court below, in its discretion, denied a continuance of the restraining order theretofore issued until the hearing, but on the contrary dissolved the same, will be upheld. *Lance v. Cogdill*, 238 N.C. 500, 78 S.E. 2d 319, and cited cases.

The judgment below is

Affirmed.